#24247-a-SLZ

**2007 SD 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LEANDER CLAY AND
JAMES SMITH,                                    Plaintiffs and Appellants,
    and
KENNETH MUETZE,                                 Plaintiff,


    v.


DOUGLAS WEBER, INDIVIDUALLY,
TIM REISCH, INDIVIDUALLY, AND
JEFF BLOOMBERG, INDIVIDUALLY,       Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GLEN A. SEVERSON
Judge

* * * *

LEANDER CLAY
JAMES SMITH
South Dakota State Penitentiary
Sioux Falls, South Dakota              Pro se appellants.


JAMES E. MOORE
SANDER J. MOREHEAD of
Woods, Fuller, Shultz & Smith          Attorneys for defendants
Sioux Falls, South Dakota              and appellees.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED **05/02/07**

#24247

ZINTER, Justice

[¶1.]		Leander Clay, Kenneth Muetze, and James Smith (collectively referred to as Inmates) reside in the South Dakota State Penitentiary (SDSP). They brought this suit for declaratory judgment against prison administrators Douglas Weber, Tim Reisch, and Jeff Bloomberg (collectively referred to as Administrators). The suit arose as a result of the Inmates' alleged: loss of personal property; diversion of money from their inmate accounts; removal of computers and word processors; and closing the law library. The circuit court granted summary judgment for the Administrators based on statutory immunity, and the Inmates appeal. We affirm, but for different reasons.

**Facts and Procedural History**

[¶2.]		According to the Statement of Undisputed Material Facts submitted by Administrators,[1] Weber is the Warden of the SDSP. Reisch is the Secretary of the South Dakota Department of Corrections, and Bloomberg is the former Secretary.

[¶3.]		While incarcerated, Smith and Clay were both found guilty of "major infractions" of prison rules. As a result of those infractions, both complain that they were impermissibly disciplined by being deprived of certain personal property in their cells for a period of one year. All three Inmates also alleged that money was improperly taken from their inmate accounts. This money was either earned while working in the SDSP or it was sent to the Inmates by others. Smith further

---

1.	Inmates did not object to the Administrators' Statement of Undisputed Facts. Therefore, we accept them as the undisputed material facts governing this case.

-1-

complains about a change in prison policy, prohibiting inmates from owning word processors or computer systems. Smith finally complains that Weber closed the prison legal library.

[¶4.] The legal theory underlying all these complaints is the argument that the Administrators were acting without authority because the "policies" at issue were invalid as they had not been formally adopted as an administrative rule. Inmates phrase the legal issue as whether: "Bloomberg and Weber. . . in effect repealed Article XIV section 2 of the [South Dakota Constitution] and SDCL 1-26A-2. . . [because they] established rule of the DOC by Policy.[2] Repealing 307 [*sic*] of the [Administrative Rules of South Dakota] without authority of law." The complaint specifically disclaims any violation of federal constitutional or statutory law.

[¶5.] Following the submission of briefs and an opportunity to submit supporting and opposing materials, the circuit court granted summary judgment

---

2. Article XIV section 2, governs charitable and penal institutions, providing that: "The state institutions provided for in the preceding section shall be governed under such rules and restrictions as the Legislature shall provide."

   SDCL 1-26A-2 provides that generally, the Administrative Rules of South Dakota are the rules of executive state agencies.

#24247

without a hearing.  The circuit court dismissed Inmates' claims concluding that the

Administrators were entitled to statutory immunity under SDCL §§ 3-21-8 and 3-

21-9.[3]  Inmates appeal raising two[4] issues:

1. Whether the circuit court erred in concluding that the Inmates' claims were barred by statutory immunity.

2. Whether the circuit court erred in granting summary judgment without a hearing.

**Standard of Review**

[¶6.]     Our standard of review is well-settled:

"Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

3.     SDCL 3-21-8 provides:

No person, political subdivision, or the state is liable for failure to provide a prison, jail, or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, programs, facilities, or services in a prison or other correctional facility.

SDCL 3-21-9 provides:

No person, political subdivision, or the state is liable for any injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release, or for any injury caused by or resulting from:

(1) An escaping or escaped prisoner;
(2) An escaping or escaped person;
(3) A person resisting arrest;
(4) A prisoner to any other prisoner; or
(5) Services or programs administered by or on behalf of the prison, jail, or correctional facility.

4.     Inmates raise other issues in their brief to this Court.  Because these issues were not raised before the circuit court, we decline to address them.

matter of law.' " Krier v. Dell Rapids Twp., 2006 SD 10, ¶12, 709 NW2d 841, 844-45 (citing SDCL 15-6-56(c)). "Once we determine that the material facts are undisputed, our review is limited to whether the law was correctly applied." *Id.* (citation omitted). "We review questions of law de novo with no discretion given to the circuit court." Wagner v. Brownlee, 2006 SD 38, ¶24, 713 NW2d 592, 600 (citing Blenner v. City of Rapid City, 2003 SD 121, ¶41, 670 NW2d 508, 514).

Pauley v. Simonson, 2006 SD 73, ¶7, 720 NW2d 665, 667. "We will [also] affirm the circuit court on summary judgment if it is correct for any reason." A-G-E Corp. v. State, 2006 SD 66, ¶13, 719 NW2d 780, 785 (citations omitted).

## Decision

[¶7.] We initially note that although we affirm the circuit court, we do not rely upon the circuit court's rationale that statutory immunity barred this action.[5] A substantial portion of this action was a request for declaratory judgment, and we have not been presented with argument or authority that statutory immunity from liability applies to declaratory actions seeking declaratory and injunctive relief. Generally, immunity does not bar such relief. *See* Dakota Systems, Inc. v. Viken, 2005 SD 27, ¶¶8-9, 694 NW2d 23, 27-28 (discussing declaratory relief and sovereign immunity). Furthermore, the statutes at issue only provide immunity from liability for damages. *See* SDCL 3-21-8 and SDCL 3-21-9 (stating: "No person, political

---

5. We do, however, observe that Inmates mistakenly argue that the activities of the Administrators were ministerial, and therefore Administrators were not entitled to statutory "immunity." Because the ministerial/discretionary distinction is not within the text of SDCL 3-21-8 and SDCL 3-21-9, that distinction is not relevant to the Administrators' entitlement to this statutory immunity. The distinction is only relevant under *sovereign* immunity. *See generally* Wulf v. Senst, 2003 SD 105, ¶20, 669 NW2d 135, 142. Therefore, even if statutory immunity were to be applied in this case, the ministerial/discretionary distinction would be immaterial.

subdivision, or the state is liable . . . .").  For both reasons, the immunity statutes were not a basis for summary judgment on the Inmates' claims for declaratory and injunctive relief.[6]

[¶8.]    Consequently, we decline to address the statutory immunity claim. Instead, we address Inmates' underlying legal theory that the Administrators were acting without authority of law because they were acting pursuant to policies rather than lawfully adopted administrative rules.  Inmates claim that the Administrators acted without authority in four areas: taking of money, taking of personal property, taking of computers, and closing the law library.

*Taking of Money*

[¶9.]    The only record evidence indicating why Inmates' money was taken is a letter from Weber to Muetze in answer to Muetze's request for an administrative remedy on this issue.  The letter indicated that the SDSP took the money for the Inmates' cost of incarceration.  The pleadings suggest it was taken while the Inmates were working at Private Sector Prison Industries.  The Inmates' briefs and the circuit court's opinion do not provide further clarification.

[¶10.]    SDCL 24-2-28 provides that: "Each inmate under the jurisdiction of the Department of Corrections is liable for the cost of the inmate's confinement . . . ." Furthermore, the Department is authorized by statute to take these costs from inmate accounts:

> Each inmate is liable for court-ordered fines, costs, fees, sanctions, and restitution and any obligation incurred while

---

6.    Under the complaint, statutory immunity was only relevant to the Inmates' claim for damages for the loss or destruction of their personal property.

> under the jurisdiction of the Department of Corrections. . . .
> Disbursement shall be made from an inmate's institutional
> account to defray the inmate's obligation, regardless of the
> source of the inmate's funds, including moneys in the inmate's
> institutional account . . . and wages earned by the inmate . . . .[7]

SDCL 24-2-29. Therefore, even if there were no administrative rules formally adopted under SDCL ch 1-26, the Administrators had statutory authorization for the diversion of the Inmates' money. Consequently, we conclude that the Administrators' diversion of money from the Inmates' accounts was not unlawful, and the circuit court properly dismissed.[8]

*Personal Property*

[¶11.] Smith and Clay claim that their alleged loss of personal property as a disciplinary punishment was unlawful. The property was removed under Department of Corrections Policy 3C.4. Policy 3C.4 provides: "Inmates will be subject to the forfeiture of personal property items as sanction for Category 5 and Category 4 Prohibited Acts." Smith and Clay allege that Policy 3C.4 impermissibly

---

7. Concerning the necessity of rules, we note that: "The Department of Corrections may promulgate rules . . . to implement. . . . Deductions from prison industries revenues or inmate wages to be contributed to a crime victim assistance or compensation program . . . ." SDCL 24-7-3. This statute is permissive and does not mandate the adoption of administrative rules.

8. Inmates' complaint also alleged that DOC Policy 1B-10, Inmate Accounts and Financial Responsibility, "was not adopted pursuant to Chapter 1-26 as required by SDCL 1-15-20(5) and SDCL 24-7-3. DOC policy 1B-10 violates SDCL 1-15-2.1 and SDCL 24-7-3." However, this policy was not included in the record. Therefore, we do not consider it. "'[T]he ultimate responsibility for presenting an adequate record on appeal falls upon the appellant.'" Toben v. Jeske, 2006 SD 57, ¶11, 718 NW2d 32, 35 (quoting Caneva v. Miners & Merchants Bank, 335 NW2d 339, 342 (SD 1983)).

expanded by "policy" the statutory disciplinary sanctions authorized in SDCL 24-2-9

and SDCL 24-15A-4. [9]

[¶12.]		However, the Department of Corrections was specifically authorized by

statute to "prescribe departmental *policies* and procedures for the management of

its institutions and agencies, including inmate disciplinary matters."  SDCL 1-15-20

(emphasis added).  Therefore, Policy 3C.4 was authorized by statute.  Consequently,

even if there were no validly enacted administrative rule governing the loss of

---

9.	SDCL 24-2-9 provides:

> Any inmate violating the rules or institutional policies is subject to any one or more of the following disciplinary sanctions:
> (1) Withholding of statutory time for good conduct;
> (2) Punitive confinement;
> (3) Imposition of fines;
> (4) Restriction of privileges;
> (5) Loss of work or school privileges;
> (6) Additional labor without compensation;
> (7) Referral to various programs;
> (8) Transfer to a more secure housing unit;
> (9) Change in classification status.
> No corporal punishment may be inflicted upon inmates in the penitentiary.

SDCL 24-15A-4 provides:

> Any inmate violating the rules or institutional policies is subject to any of the following disciplinary sanctions:
> (1) Disciplinary segregation;
> (2) Imposition of fines;
> (3) Loss of privileges;
> (4) Additional labor without compensation;
> (5) Referral to various programs;
> (6) Transfer to a more secure housing unit;
> (7) Change in classification status.
> No corporal punishment may be inflicted upon inmates in the penitentiary.

personal property privileges for Inmates' rule infractions, the Administrators were authorized to act by policy rather than rule in this area.

*Computers and Word Processors*

[¶13.]        We do not reach the merits of Smith's claim concerning the loss of computers and word processors because his claim is barred by res judicata.

> The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of *an issue actually litigated or which could have been properly raised and determined* in a prior action. Matter of Estate of Nelson, 330 NW2d 151 (SD 1983); Schmidt v. Zellmer, 298 NW2d 178 (SD 1980); Gottschalk v. South Dakota State Real Estate Comm'n, 264 NW2d 905 (SD 1978). . . .
>
> For the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. Carr v. Preslar, 73 SD 610, 47 NW2d 497 (1951); Jerome v. Rust, 23 SD 409, 122 NW 344 (1909). In *Golden v. Oahe Enterprises, Inc.*, 90 SD 263, 240 NW2d 102 (1976), we approved of the test adopted in *Hanson v. Hunt Oil Co.*, 505 F2d 1237 (8thCir 1974), for determining if both causes of action are the same. This test is a query into whether the wrong sought to be redressed is the same in both actions.

Black Hills Jewelry Mfg. Co. v. Felco Jewel Industries, Inc., 336 NW2d 153, 157 (SD 1983) (emphasis in original). If the wrong sought to be redressed is the same in both actions:

> A judgment which bars a second action upon the same claim extends not only to every matter offered and received to sustain or defeat the claim or demand, but also to all other admissible matters which might have been offered for the same purpose. Cromwell v. County of Sac, 1877, 94 US 351, 24 LEd 195; Hanson v. Hunt Oil Company, 505 F2d at 1239; Ramsey Tp; McCook County v. Lake, 1941, 68 SD 67, 298 NW 356; Chicago and Northwestern Railway Co. v. Gillis, 1964, 80 SD 617, 129 NW2d 532. If, however, the second action is based upon a different claim or demand, the prior judgment precludes further consideration only of those issues which were actually litigated and determined . . . .

*Golden*, 90 SD at 276, 240 NW2d at 109.

[¶14.]     Smith was a member of another group of inmates who brought a prior action in federal court claiming that this policy change involving inmate ownership of computers and similar equipment violated South Dakota law and their constitutional right of access to the courts.  The federal court dismissed that case for failure to state a claim.  Waff v. South Dakota Dep't of Corr., CIV 99-4045 (DSD 2001), *aff'd in part and rev'd in part by* Waff v. South Dakota Dep't of Corr., 51 FedAppx 615 (8thCir 2002) (unpublished).  The district court's order following the Eighth Circuit's decision noted that Smith had been dismissed from the suit and that he had not appealed that dismissal.[10]

[¶15.]     In this proceeding, Smith again alleges that the loss of his computer violated due process under the State Constitution.  However, this claim either was or could have been asserted in the prior federal suit.[11]

> It is settled law in South Dakota that a judgment subject to res judicata 'constitute[s] an absolute bar against the prosecution, not only of every claim or demand therein in controversy, *but also of all other admissible matters that might have been offered to sustain or defeat such claims or demands.*'

---

10.    The federal court order specified that "the Judgment of Dismissal entered by Judge Jones on August 23, 2001, is the final judgment against . . . Smith and [he is] no longer [a party] to this action."

11.    Those inmates specifically "claimed violations of state and federal law-deprivation of property, cruel and unusual punishment, violation of the South Dakota Constitution, and denial of due process and equal protection as well as access to the courts . . . ." *Waff* , 51 FedAppx at 616, 2002 WL 31641530, at 1.

Weddell v. Weber, 2000 SD 3, ¶39, 604 NW2d 274, 283-284 (quoting Cochrun v. Solem, 397 NW2d 94, 96 (SD 1986)) (emphasis in original).  Because Smith's current claim either was or could have been offered to sustain his claim in the federal suit, his current claim is barred by res judicata or collateral estoppel.[12]  *See also* Grand State Property, Inc. v. Woods, Fuller, Schultz, & Smith, P.C., 1996 SD 139, ¶12, 556 NW2d 84, 87 (listing the four factors of collateral estoppel).

*Law Library*

[¶16.]    Smith's final claim involves the alleged closing of the law library. However, this claim is also barred by res judicata and collateral estoppel.  The federal suit also involved the question whether the closing of the law library denied access to the courts.  *See supra*, ¶¶13-14.  Smith raises the same argument here under the State Constitution.  His complaint alleged that: "In order to satisfy the [South Dakota Constitution's] mandate requiring meaningful access to courts Article VI of the SDC. [*sic*] Plaintiffs were provided with a legal library. . . . Weber closed the legal library."  Because this is the same issue, and Smith's legal claim either was or could have been considered in the federal suit, it is barred by res judicata or collateral estoppel.  *See supra*, ¶13.

---

12.    Even if we were to reach the merits of this claim, it is barred.  We cannot review the alleged policy disallowing possession of computers because it is not in the record.  "'[T]he settled record is the sole evidence of the circuit court's proceedings, and, when confronted with an incomplete record, our presumption is that the circuit court acted properly.'"  State v. McCrary, 2004 SD 18, ¶13, 676 NW2d 116, 121 (quoting State v. Jones, 416 NW2d 875, 878 (SD 1987)).  "As the party asserting error, [Inmates] had the burden 'of ensuring an adequate record.'"  *Id*. (quoting State v. Cates, 2001 SD 99, ¶18, 632 NW2d 28, 36).

## 2. Motion Hearing

[¶17.]	Inmates finally argue that because there was no hearing on the summary judgment motion, they "were not allowed to demonstrate the existence of a genuine issue of material fact . . . . A hearing would have allowed [them] to show a clear violation of Article XIV Section 2." They claim that "since there were questions of constitutional nature as to [Administrators'] failure to properly carry out their *ministerial duties* a hearing should have been held." (Inmate's Br 3) (emphasis added). However, as discussed *supra*, n5, the ministerial/discretionary distinction would have been immaterial in considering the Administrators' entitlement to *statutory* immunity under SDCL §§ 3-21-8 and 3-21-9. Therefore, even if Inmates were prevented from developing a factual record relating to the ministerial/discretionary duty distinction, that defect would not have precluded summary judgment because it did not prevent the articulation of a genuine issue of *material* fact.

[¶18.]	But more fundamentally, we note that Inmates do not argue that they were denied the opportunity to file any pleadings, depositions, answers to interrogatories, admissions or affidavits demonstrating the existence of questions of material fact on any issue. *See* SDCL 15-6-56(c).[13] We also note that Inmates' response to the motion for summary judgment did not attempt to raise any issues of

---

13.	SDCL 15-6-56(c), dealing with summary judgment, provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue
>
> (continued . . .)

fact. They resisted the Administrators' summary judgment motion simply: "based on a supporting brief, [the] statement of uncontested Facts, [*sic*] and [the] evidence attached to the statement of uncontested facts." Considering their response and the fact that the circuit court may hear evidence on motions by affidavit, oral testimony or deposition, SDCL 15-6-43(e), the lack of a hearing did not deny Inmates an opportunity to oppose summary judgment by identifying material issues of disputed fact. We finally observe that, "oral testimony at summary judgment motion[] hearings should be allowed only in rare circumstances and for the exclusive purposes of clarification or correction." Millard v. City of Sioux Falls, 1999 SD 18, ¶12, 589 NW2d 217, 219. And here, Inmates have not argued that oral argument was necessary for clarification or correction.

[¶19.]     For the foregoing reasons, the judgment of the circuit court is affirmed.

[¶20.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

_____

(. . . continued)

        as to any material fact and that the moving party is entitled to a judgment as a matter of law.