#24511-DG
**2008 SD 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOHN UNRUH II; NATHANIEL UNRUH
and AMY MILLER, individually and as
Personal Representatives of the Estate of
JOHN HAROLD UNRUH, deceased; and
MOLLIE EICHMAN, individually,

                                              Plaintiffs,

    v.

DAVISON COUNTY, SOUTH DAKOTA; HUTCHINSON
COUNTY, SOUTH DAKOTA; DAVID MILES, individually
and in his capacity as the Davison County Sheriff; DON RADEL,
individually and in his capacity as Administrator of the Davison
County Jail; CONNIE IRELAND, individually and in her capacity
as a Davison County employee; GLEN ELLERTON, individually
and in his capacity as a Davison County employee; JEFF MINER,
individually and in his capacity as a Davison County employee;
JERRY MCNARY, individually and in his capacity as a Davison
County employee; CINDY VOYLES, individually and in her
capacity as a Davison County employee; ROGER ERICKSON,
individually and in his capacity as a Davison County employee;
GINGER FAAS, individually and in her capacity as a Davison
County employee; LINDA ALDRICH, individually and in her
capacity as a Davison County employee; TOM KULM, individually
and in his capacity as a Davison County employee; CAROL RADEL,
individually and in her capacity as a Davison County employee;
and OTHER UNKNOWN PERSONS, individually and in their
capacity as employees of Hutchinson and Davison Counties,
South Dakota,                                  Defendants.

\* \* \* \*
CERTIFIED QUESTION FROM THE UNITED
STATES DISTRICT COURT, DISTRICT OF SOUTH
DAKOTA, SOUTHERN DIVISION
\* \* \* \*
HONORABLE LAWRENCE L. PIERSOL
UNITED STATES DISTRICT JUDGE
\* \* \* \*

                         ORIGINAL PROCEEDING
                         ARGUED NOVEMBER 7, 2007

                         OPINION FILED **01/30/08**

SHEILA S. WOODWARD
MICHAEL F. MARLOW of
Johnson, Miner, Marlow
  Woodward & Huff, LLP
Yankton South Dakota                          Attorneys for plaintiffs.


GARY P. THIMSEN
JAMES A. POWER
CHERI S. RAYMOND of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls South Dakota                       Attorneys for defendants
                                               Davison County & Davison
                                               County Defendants.


DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls South Dakota                       Attorneys for defendants
                                               Hutchinson County &
                                               Deb Gering.

#24511

GILBERTSON, Chief Justice

[¶1.]        Plaintiffs, John Unruh II, Nathaniel Unruh, Amy Miller, individually and as personal representatives and on behalf of the Estate of John H. Unruh, deceased, (Unruh) and Mollie Eichman, individually, brought an action against Davison County and Hutchinson County and several of their employees known and unknown[1] (collectively "Defendants") for negligent conduct and conduct deliberately indifferent to Unruh's civil rights, resulting in his death.  Plaintiffs filed their suit in the United States District Court, District of South Dakota, Southern Division, Sioux Falls, South Dakota.  Defendants asserted immunity from liability under SDCL 3-21-8 and 3-21-9.  The District Court certified one question to the South Dakota Supreme Court.  For the reasons set forth herein, we answer the certified question in the negative.

## FACTS AND PROCEDURE

[¶2.]        On the night of June 27, 2004, Unruh was arrested by the Freeman, South Dakota City Police and charged with third offense driving under the influence.  Following a blood test conducted at the Freeman Hospital,[2] Unruh was transferred to the custody of the Hutchinson County Sheriff's Department.  Hutchinson County contracted with Davison County for jail services.  A Hutchinson

---

1.    Hutchinson County and "Other Unknown Persons" individually and in their capacity as employees of Hutchinson County have been dismissed from the law suit.  The sole remaining Hutchinson County defendant is Sheriff's Deputy Deb Gering.  Gering is alleged to have failed to follow through on a request for medications for Unruh after receiving a telephone request from Davison County Jail staff.

2.    Unruh's blood alcohol content was .356.

-1-

County Sheriff's deputy transported Unruh to the Davison County Jail in Mitchell, South Dakota. Unruh was booked into custody by Davison County on June 28, 2007 at about 12:30 a.m.

[¶3.] Unruh, who had a history of excessive alcohol consumption and medical problems that included a heart attack and aneurism, had been prescribed a number of prescription medicines. Though the transporting deputy stopped at Unruh's house at his request, Unruh elected not to bring his medications, anticipating that he would make bail the next day. While in Davison County's custody, Unruh's physical condition deteriorated. By the evening of June 29, he had become delirious. That night, Unruh was transported to the Avera Queen of Peace Hospital in Mitchell at around 11:30 p.m. He was later evacuated by air to the Heart Hospital in Sioux Falls, South Dakota where he died.

[¶4.] Plaintiffs alleged that Defendants' negligence and failure to follow procedures resulted in Unruh's death and violated his civil rights. Defendants asserted that they were immune from claims of liability in connection with Unruh's death as provided under SDCL 3-21-8 and 3-21-9. Plaintiffs argued that Defendants, who had liability coverage in effect at the time in question,[3] had waived their immunity to the extent of that coverage as provided under SDCL 21-32A-1.

> The District Court certified one question to this Court, which we accepted:

---

3. Davison County had liability coverage through its participation in the South Dakota Public Assurance Alliance, a government risk sharing pool. Hutchinson County carried liability insurance through a private insurer, EMC Insurance Company.

> Does a county's purchase of liability insurance or participation in a risk sharing pool, pursuant to SDCL 21-32A-1, waive the county's and its employees' immunity granted by SDCL 3-21-8 and 3-21-9 to the extent of such insurance or participation in a risk sharing pool?

## STANDARD OF REVIEW

[¶5.]	Technically, this Court does not sit as an appellate court in this case as the matter came to us as a certified question from the United States District Court for the District of South Dakota. Nevertheless, we employ the same legal standards for this analysis that we use when reviewing appellate cases.

> The construction of a statute is a question of law. We interpret statutes in accord with legislative intent. Such intent is derived from the plain, ordinary and popular meaning of statutory language. "[I]ntent must be determined from the statute as a whole, as well as enactments relating to the same subject." "[W]here statutes appear to conflict, it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them 'harmonious and workable.'"

Wiersma v. Maple Leaf Farms, 1996 SD 16, ¶4, 543 NW2d 787, 789 (internal citations omitted).

## ANALYSIS AND ANSWER

[¶6.]	**Does a county's purchase of liability insurance or participation in a risk sharing pool, pursuant to SDCL 21-32A-1, waive the county's and its employees' immunity granted by SDCL 3-21-8 and 3-21-9 to the extent of such insurance or participation in a risk sharing pool?**

[¶7.]	The States' sovereign immunity derives from English law and was ratified in Article III, Section 2 of the United States Constitution. Alden v. Maine, 527 US 706, 713, 119 SCt 2240, 2246-47, 144 LEd2d 636 (1999). The Eleventh

Amendment extends the States' immunity from suits to those commenced by citizens of another State or citizens or subjects of a foreign country. *Id.* at 713, 119 SCt at 2246, 144 LEd2d 636 (citing US Const amend 11).

[¶8.]     Sovereign immunity is established on a state level by Article III, Section 27 of the South Dakota Constitution: "The Legislature shall direct by law in what manner and in what courts suits may be brought against the state." Still, this Court recognizes that sovereign immunity arises in part from the common law. Sioux Falls Constr. Co. v. City of Sioux Falls, 297 NW2d 454, 457 (SD 1980) (citing High-Grade Oil Co., Inc. v. Sommer, 295 NW2d 736, 738 (SD 1980)). Sovereign immunity is limited in that it only exists in the absence of consent to be sued. Cromwell v. Rapid City Police Dept., 2001 SD 100, ¶13, 632 NW2d 20, 24 (quoting *Alden*, 527 US at 754, 119 SCt at 2267, 144 LEd2d 636; citing *In re* Request for Opinion of the Supreme Court Relative to Constitutionality of SDCL 21-32-17, 379 NW2d 822, 825 (SD 1985)).

[¶9.]     In 1981, the Legislature authorized the State of South Dakota to obtain liability insurance for the purpose of insuring the State, its officers, agents and employees. SDCL 21-32-15. During the same legislative session SDCL 21-32-16 was enacted, therein providing that to the extent of liability insurance coverage, the State is "deemed to have waived the *common law* doctrine of sovereign

immunity and consented to suit in the same manner that any other party may be sued."[4]  SDCL 21-32-16 (emphasis added).

[¶10.]       In 1986, the Legislature extended sovereign immunity and the waiver provisions of SDCL chapter 21-32 to all public entities, including counties,[5] with the enactment of SDCL chapter 21-32A.[6]  SDCL 21-32A-1 provides:

> *To the extent that any public entity*, other than the state, *participates in a risk sharing pool or purchases liability insurance* and to the extent that coverage is afforded thereunder, *the public entity shall be deemed to have waived the **common law** doctrine of sovereign immunity* and shall be deemed to have consented to suit in the same manner

---

4.    In 1983, the Legislature expressly extended SDCL 21-32-16 to employees, officers and agents of the state by enacting SDCL 21-32-17.  The statute provides as follows:

*Except as provided in § 21-32-16*, any employee, officer, or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity.

SDCL 21-32-17 (emphasis added).

5.    In *Brown v. Egan School Dist. No. 50-2*, this Court opined that the definition of "public entities" under SDCL 3-21-1, applies to "public entities" as the term is used in SDCL chapter 21-32A. 449 NW2d 259, 262 (SD 1989).  SDCL 3-21-1 provides in pertinent part:

"Public entities," the State of South Dakota, all of its branches and agencies, boards and commissions.  The term also includes all public entities established by law exercising any part of the sovereign power of the state, including, but not limited to municipalities, *counties*, school districts, townships, sewer and irrigation districts, and all other legal entities that public entities are authorized by law to establish.

(Emphasis added).

6.    In 1987, the Legislature enacted a measure which added language to SDCL chapter 21-32A extending the waiver provisions of that chapter to include Participation in risk sharing pools.

that any other party may be sued. The waiver contained in this section and §§ 21-32A-2 and 21-32A-3 is subject to the provisions of § 3-22-17.

(Emphasis added). SDCL 21-32A-2 essentially applies the provisions of SDCL 21-32-17, *see supra* note 4, to employees, officers or agents of any public entity. SDCL 21-32A-3 provides:

> *Except insofar as a public entity participates in a risk sharing pool or insurance is purchased* pursuant to § 21-32A-1, *any public entity is immune from liability for damages* whether the function in which it is involved is governmental or proprietary. The immunity recognized herein may be raised by way of affirmative defense.

[¶11.] During the same legislative session in which SDCL chapter 21-32A was enacted, the Legislature also enacted SDCL 3-21-8 and 3-21-9, related to the operation and maintenance of jails and correctional facilities, and administration of prisoner parole and release.[7] SDCL 3-21-8 provides:

> No person, political subdivision, or the state is liable for failure to provide a prison, jail, or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, programs, facilities, or services in a prison or other correctional facility.

SDCL 3-21-9 provides in pertinent part:

> No person, political subdivision, or the state is liable for any injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release, or for any injury caused by or resulting from:
> . . .
> (5)    Services or programs administered by or on behalf of the prison, jail, or correctional facility.

---

7.    The 1986 Legislature thought this protection significant enough to pass it with an emergency clause, thus making it effective immediately upon approval by the Governor.

[¶12.]     In *Brown v. Egan School District No. 50-2,* 449 NW2d 259 (SD 1989), this Court discussed the proposition that there are multiple and independent basis for sovereign immunity. The claim in *Brown* arose from the defendant school district's operation of a school bus. *Id*. at 260. While driving to work, during a morning when blizzard-like conditions existed, the plaintiff unexpectedly encountered one of the district's buses parked in the middle of the road. Unable to stop, the plaintiff was severely injured when she collided with the rear end of the bus. At the time of the collision, the bus was being used for the routine transportation of students to school.

[¶13.]     The district carried liability insurance. The plaintiff filed a tort action against the district to the extent of its insurance coverage based on waiver under SDCL 21-32A-1. However, the district asserted SDCL 13-29-1[8] as an affirmative defense claiming the statute created an independent *statutory* basis for sovereign immunity which was separate from the previously recognized constitutional and common law basis and which was not waived by the purchase of liability insurance coverage.

---

8.     At the time, SDCL 13-29-1 provided in part:

The school board of any school district may acquire, own, operate, or hire buses for the transportation of students to and from its schools either from within or without the district or for transportation to and from athletic, musical, speech, and other interscholastic contests in which participation is authorized by the school board. *If the use of a school bus is* **granted** *by the school board pursuant to subdivision (1) or (8) of § 49-28-2, the school district is not liable for suit or damages which may arise as the result of the use.*

(Emphasis added).

[¶14.] The Court found that the immunity asserted by the district under SDCL 13-29-1, as then enacted, did not apply to the facts of that case. *Id*. at 261-62. The Court went on to dismiss the proposition of a separate "statutory sovereign immunity." *Id*. at 262. In dismissing the proposition, however, the Court did so with specific reference to SDCL 13-29-1 and the waiver statute SDCL 21-32A-1.

[¶15.] SDCL 13-29-1, as it was then enacted, authorized school districts to own and operate buses for the purpose of transporting students to and from school and extracurricular activities. *See supra* note 8. The statute also provided that if districts *granted* usage of school buses for certain non- regulated purposes, defined under then enacted SDCL 49-28-2(1) or (8),[9] the districts would not be liable for any

---

9. At the time, SDCL 49-28-2 provided in part that the following vehicles were exempt from Public Utilities Commission regulation:

(1) Motor vehicles used solely in transportation as authorized by § 13-29-1 to and from consolidated or other schools, on trips approved by the school board for the purpose of attending interscholastic activities or other educational programs, or when rented by or their use has been granted to a nonprofit club, group, organization, fraternal society, association or corporation under § 13-24-20 for the transportation of persons under the age of twenty-one years. However, when rented or the use is granted, the movement of the motor vehicle is restricted to a radius of one hundred miles in any direction from the point at which the motor vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled, the driver of such motor vehicle must be fully qualified to drive the motor vehicle as required by the laws of this state, and *the motor vehicle must be covered by an insurance policy similar to, with the limits no less than, the insurance coverage which is in effect while the motor vehicle is used for the transportation of school children*, school personnel or other adult persons authorized by the school board of a school;

. . .

(8) Motor vehicles used by a nonprofit organization to solely provide transportation to persons fifty five years of age and over or transport

(continued . . .)

subsequent damages. *Id.* SDCL 49-28-2(1) excluded from Public Utilities Commission regulation motor vehicles used by school districts for transporting students to and from schools or when use was *granted* to nonprofit organizations for transport of persons under twenty-one years of age. *See supra* note 9. SDCL 49-28-2(8) excluded from Commission regulation, motor vehicles used by nonprofits for transportation of senior citizens or the handicapped. *Id.*

[¶16.]        The *grant* under SDCL 49-28-2(1) was conditioned in part upon an organization furnishing insurance coverage to the extent of that carried by a school district for usual transportation during school activities. *Id.* In holding that the school district waived sovereign immunity under SDCL 21-32A-1 by purchasing liability insurance, the Court in *Brown* concluded that *granted* use pursuant to SDCL 49-28-2(1) or (8), invoking immunity under SDCL 13-29-1, was related to nonprofit-organization use of school district buses. 449 NW2d at 261. The Court found that since such use under SDCL 49-28-2(1) was in part conditioned upon the non-profit carrying liability insurance having limits no less than that carried by the school district, the immunity language in SDCL 13-29-1 served only to prevent stacking of liability insurance coverage and "did nothing more than reiterate the

---

(. . . continued)

> those who by reasons of a physical or mental handicap are unable to utilize conventional public transportation[.]

(Emphasis added).

common law concept of sovereign immunity embodied in the South Dakota

Constitution[.]"[10]   *Id.* at 262.

[¶17.]      With respect to SDCL 21-32A-1, the Court concluded:

> SDCL 21-32A-1 provides that a public entity such as a
> school district is deemed to have waived immunity and
> to have consented to be sued as any other party may be
> sued. *It does not create the special variety of sovereign
> immunity urged by District.*  Sovereign immunity exists
> for school district's [sic] use of school buses, but can be
> waived, as was done here, by the purchase of liability
> insurance.

*Id.* (emphasis added).  We agree with the Court's statement and its holding with

respect to the immunity provided under then enacted SDCL 13-29-1 and that it did

not apply to the facts of the case.  The sovereign immunity that the school district

attempted to assert as a defense in *Brown* was created by the Legislature pursuant

to SDCL 21-32A-3.  *See supra* ¶10.  The district's purchase of liability insurance

effected a waiver of the statutorily created sovereign immunity as provided by

SDCL 21-32A-1.  The district's assertion that immunity was preserved under SDCL

13-29-1, notwithstanding SDCL 21-32A-1, was simply incorrect *under the

circumstances*.

[¶18.]      The South Dakota Legislature has enacted many statutes that provide

immunity from tort claims.  It did so for a purpose.  Although we have not

previously addressed whether a statutory immunity provision supersedes waiver

provisions such as those found in SDCL chapters 21-32 and 21-32A, our opinions in

10.    In arriving at its conclusion, the Court made no reference to the fact that
       SDCL 49-28-2(8) included no mandate that liability insurance coverage be a
       condition to non-regulated use under that subsection.  *See supra* note 9.

decisions subsequent to the Court's decision in *Brown* are indicative of the efficacy of statutory immunity. Were it to the contrary, all such sovereign immunity statutes enacted or amended since SDCL chapters 21-32 and 21-32A in 1986 would be superfluous since they would do no more than was done in that statute. Rather, the Legislature has decided to grant statutory sovereign immunity in specific instances which are not subject to the waiver provisions in SDCL chapters 21-32 and 21-32A. *E.g.*, SDCL 7-9-21(1997) (registers of deeds not liable for refusal to record documents when carried out in good faith); SDCL 9-38-105 (*amended* 1992) (municipalities or governing boards thereof not liable for negligence in operation of public recreation facilities by officers or employees of recreation board); SDCL 13-24-20 (*amended* 2007) (school districts not liable for damages arising out of use of their facilities, computers, motor vehicles, or land granted for community service purposes); SDCL 20-9-4.1 (*amended* 1986) (no liability for good faith lending of emergency care and services); SDCL 20-9-4.6 (2000) (immunity from liability for use or failure to use automatic external defibrillator in emergency) SDCL 26-8A-14 (*amended* 1991) (immunity from liability for good faith reporting in connection with suspected child abuse); SDCL 27A-7-10 (2000) (immunity from liability for county boards of mental illness for good faith action on applications and petitions for involuntary commitment); SDCL 36-4-25 (1998) (physicians peer review committee not liable for acts in reasonable belief that action was warranted).

[¶19.]     Furthermore, a review of the above statutes reveals a significant expansion, beyond common law sovereign immunity, resulting from the statutory enactments. By definition common law sovereign immunity protected only the

sovereign and its agents – today employees of the affected public entities. *See Conway v. Humbert*, 145 NW2d 524, 526 (SD 1966) (holding sovereign immunity to be available to "an officer or employee [of a governmental entity] in the performance of his duties"). However, many of these statutes, enacted after 1986, expand immunity beyond the purview of government and its protected individuals to all "persons," not just officers and employees of a governmental entity.

[¶20.] In *Hall v. City of Watertown ex rel. City of Watertown Police Department.*, the plaintiffs were injured as bystanders when an individual in a stolen vehicle lost control while being pursued by a Watertown, South Dakota Police Officer. 2001 SD 137, ¶2, 636 NW2d 686, 687. The plaintiffs sued the City of Watertown, its police department and the pursuit officer. *Id*. ¶3. The defendants sought summary judgment asserting immunity under SDCL 3-21-9. *Id*. ¶3, 636 NW2d at 688. The circuit court agreed that there was immunity under SDCL 3-21-9. However, it denied the defendants' motion ruling that it had been waived as provided under SDCL 21-32A-1 by the city's participation in a risk sharing pool. Although we affirmed the circuit court's decision to deny summary judgment, we differed with its rationale. We affirmed concluding that the statutory immunity provisions of SDCL 3-21-9 were inapplicable to the facts of the case. *Id*. ¶¶5, 7, 636 NW2d at 689.

[¶21.] The plaintiffs in *Brown Eyes v. South Dakota Department of Social Services*, sued the Department of Social Services (DSS) and several of its administrative and subordinate employees, in tort and contract, arising out of a pending adoption that failed when an Indian tribal court asserted jurisdiction over

the subject children. 2001 SD 81, ¶3, 630 NW2d 501, 504. The defendants filed a motion for summary judgment on both the tort and contract claims. *Id.* ¶4, 630 NW2d at 504. The circuit court granted the defendants' motion, setting out sovereign immunity for the rationale as to the tort claims. *Id.*

[¶22.]		In affirming the circuit court, we found that since the DSS had not purchased liability insurance or participated in a risk-sharing pool it had not waived sovereign immunity under either SDCL 21-32-16 or 21-32A-2. *Id.* ¶7, 630 NW2d at 505. We also found that DSS's administrative employees were properly granted summary judgment since they had not engaged in any activity that breached immunity. *Id.* ¶11, 630 NW2d at 506. However, we found that the three social workers involved in the pending adoption were not eligible for sovereign immunity. *Id.* ¶12. Nonetheless, we upheld the circuit court's summary judgment as to the social workers on the basis of statutory immunity grounded in a showing of good faith pursuant to SDCL 26-8A-14.[11] *Id.* ¶¶ 13, 16, 630 NW2d at 507, 508.

---

11.	SDCL 26-8A-14 provides:

Any person or party participating in good faith in the making of a report or the submitting of copies of medical examination, treatment or hospitalization records pursuant to §§ 26-8A-3 to 26-8A-8, inclusive, or pursuant to any other provisions of this chapter, is immune from any liability, civil or criminal, that might otherwise be incurred or imposed, and has the same immunity for participation in any judicial proceeding resulting from the report. Immunity also extends in the same manner to persons requesting the taking of photographs and X rays pursuant to § 26-8A-16, to persons taking the photographs and X rays, to child protection teams established by the secretary of social services, to public officials or employees involved in the investigation and treatment of child abuse or neglect or making a temporary placement of the child pursuant to this chapter, or to any person who in good faith cooperates with a child protection team or the department of social services in investigation, placement or a treatment plan. The provisions of

(continued . . .)

[¶23.]     The plaintiff's claim in *Cromwell*, like that in *Hall*, arose from a police pursuit that resulted in injury to the plaintiff. The plaintiff's injury occurred when an intoxicated motorist, who was being pursued by a Rapid City Police Officer, collided with the plaintiff's vehicle. *Cromwell*, 2001 SD 100, ¶2, 632 NW2d at 22. The defendants filed a motion for summary judgement based on sovereign immunity, which the circuit court denied. *Id.* ¶¶5, 6.

[¶24.]     The defendants in *Cromwell* participated in a liability risk-sharing pool at the time of the plaintiff's injury, thus invoking waiver under SDCL 21-32A-1. *Id.* ¶3. Following the collision, but prior to the complaint, the defendants transferred their liability coverage from the risk-sharing pool to a private insurer. *Id.* ¶4. The pool coverage was claims paid, meaning it only covered claims made prior to coverage termination. *Id.* ¶3. The private insurer's policy was claims made, meaning coverage did not commence until the effective date of the policy. *Id.* ¶4. Since the defendants failed to purchase tail coverage from the private insurer, a gap in coverage resulted. *Id.* ¶5.

[¶25.]     The defendants argued that the gap in coverage entitled them to reclaim sovereign immunity that had been waived by participation in the risk-sharing pool. *Id.* ¶18, 632 NW2d at 25. In affirming the circuit court, we held that once the defendants waived sovereign immunity, it could not be reclaimed without the plaintiff's consent. *Id.* ¶26, 632 NW2d at 26-27. However, in so holding, we

_____

(. . . continued)

this section or any other section granting or allowing the grant of immunity do not extend to any person alleged to have committed an act or acts of child abuse or neglect.

implied that the defendants could have reclaimed sovereign immunity under these circumstances had the Legislature enacted a statutory basis. In reference to the language of SDCL 21-32A-1, whereby waiver is deemed to be consent to be sued, we stated:

> Once this consent is given, *and absent a valid statutorily recognized barrier to recovery*, a public entity is in no better position than any other defendant to defeat a plaintiff's constitutional right to have his day in court. *Does a statutorily recognized barrier to recovery exist here? City has not demonstrated any exist.* Waiver of immunity and consent to be sued occurs by operation of statute. *We find no similar statute which allows a public entity to reassert sovereign immunity for a claim once it has been waived by operation of law.*

*Id*. ¶31, 632 NW2d at 27-28 (emphasis added).

[¶26.] The Legislature's intent is clear when SDCL 3-21-8 and 3-21-9 are read together with SDCL 21-32A-1. *See Wiersma*, 1996 SD 16, ¶4, 543 NW2d at 789 (restating the well settled rule of statutory construction that legislative "intent must be determined from the statute as a whole, as well as enactments relating to the same subject") (citations omitted). The plain language of SDCL 21-32A-1 states that it is the "common law doctrine of sovereign immunity" that is waived by procurement of liability coverage. Since immunity in the specific area of the operation and maintenance of jails and correctional facilities, and administration of prisoner release was created through legislative enactment of SDCL 3-21-8 and 3-21-9, the general, common law waiver provisions do not apply. *See also* Schafer v. Deuel County Bd. Of Comm'rs, 2006 SD 106, ¶10, 725 NW2d 241, 245 (reciting the rule of statutory construction that "statutes of specific application take precedence over statutes of general application") (quotation omitted).

[¶27.]　　As previously noted, SDCL 21-32A-1 and SDCL 3-21-8 and 3-21-9 were all enacted during the 1986 legislative session.  It is therefore reasonable to infer that while the Legislature sought to establish the basis under which public entities could waive sovereign immunity, it was at the same time cognizant of a need to immunize, through statute, torts arising from the operation and maintenance of jails and correctional facilities, and administration of prisoner release.  To conclude otherwise would be to render SDCL 3-21-8 and 3-21-9 meaningless since immunity would exist in lieu of public entity liability coverage, and would still be waived without SDCL 3-21-8 and 3-21-9 in the event coverage was procured.  *See* Yankton Ethanol, Inc. v. Vironment, Inc., 1999 SD 42, ¶15, 592 NW2d 596, 599 (citing the well established precept that "[t]here is a presumption against a construction which would render a statute ineffective or meaningless") (quoting *In re* Real Estate Tax Exemption for Black Hills Legal Services, Inc., 1997 SD 64, ¶12, 563 NW2d 429, 432; Rapid City Educ. Ass'n v. Rapid City School Dist., 522 NW2d 494, 498 (SD 1994) (citing Nelson v. Sch. Bd. of Hill City Sch. Dist., 459 NW2d 451, 455 (SD 1990)).

[¶28.]　　Finally, Unruh argues that the operation of a jail under set administrative policies is a ministerial function, which pursuant to our decision in *Kyllo v. Panzer*, 535 NW2d 896 (SD 1995), would preclude the application of sovereign immunity.  However, the texts of SDCL 3-21-8 or 3-21-9 contain no discretionary/ministerial distinction.  By 1986, the Legislature was certainly aware of this legal doctrine, because it has existed since early in statehood for issues concerning common law sovereign immunity.  *Kyllo,* 535 NW2d at 899 (citing State

v. Ruth, 9 SD 84, 68 NW 189, 190 (1896)). We interpret statutes as written. "When a statute's language is clear, certain and unambiguous, our function confines us to declare its meaning as plainly expressed." *Wiersma*, 1996 SD 16, ¶6, 543 NW2d at 790. Here, there is no ambiguity. The distinction between discretionary and ministerial acts is not applicable.[12] We recently addressed this specific issue. In *Clay v. Weber*, 2007 SD 45, 733 NW2d 278, we stated:

> We do, however, observe that Inmates mistakenly argue that the activities of the Administrators were ministerial, and therefore Administrators were not entitled to statutory "immunity." Because the ministerial/discretionary distinction is not within the text of SDCL 3-21-8 and 3-21-9, that distinction is not relevant to the Administrators' entitlement to this statutory immunity. The distinction is only relevant under *sovereign* immunity. . . .

*Id.* ¶7 n5, 733 NW2d at 282 n5 (emphasis in original).[13]

[¶29.]     For all the foregoing reasons, we hereby answer the certified question in the negative.

[¶30.]     SABERS and KONENKAMP, Justices, concur.

[¶31.]     ZINTER and MEIERHENRY, Justices, concur specially.

ZINTER, Justice (concurring specially).

---

12.   Likewise SDCL 3-21-8 and 3-21-9 also fail to contain the words "sovereign immunity" despite the fact the Legislature expressly put the term in SDCL 21-32A-1, which it enacted during the same session.

13.   We have also been invited to examine this issue in light of South Dakota Constitution Article VI, section 20, commonly known as the "Open Courts Provision." Plaintiffs claim SDCL 3-21-8 and 3-21-9 are unconstitutional as violative of that provision. As this is not part of the question certified to us by the Federal District Court we decline to address it at this point and leave it for another day when it is properly before us.

[¶32.]     I concur, but would not address the discretionary/ministerial question considered by the Court, even though it has been raised by the parties. I would not address that question because it was not certified as a question by the district court. Our appellate jurisdiction is limited, and in these cases it is limited to answering "questions of law *certified* . . . by the . . . United States district court[.]" SDCL 15-24A-1 (emphasis added). Because the discretionary/ministerial question was not certified, we are without jurisdiction to determine whether the discretionary/ministerial doctrine has application under the statutes and facts of this case: these are questions for the district court.

[¶33.]     I also write to note that in my view, this is a unique case that does not require analyzing and determining the differences between common law and statutory immunity. The entire field of common law sovereign immunity regarding the operation of this jail (and the purchase of insurance) has been superseded by statutes rendering this question solely a matter of statutory interpretation.

[¶34.]     The common law doctrine of sovereign immunity is acknowledged and incorporated in Article III, Section 27 of the South Dakota Constitution. Under that constitutional provision, the "Legislature shall direct by law in what manner and in what courts suits may be brought against the state." *Id.* Pursuant to that authority, the common law doctrine of sovereign immunity has today, in large part, been transformed from common law; i.e. decisional law, to statutory law. With respect to the issues of jails, insurance, and participation in risk pools, the common law has been entirely displaced by SDCL 21-32A-1, SDCL 3-21-8, and SDCL 3-21-9.

Thus, our task is to determine the nature and extent of the state's sovereign immunity under these statutory directives.

[¶35.]        Ultimately, for the reasons expressed by the Court, I agree that the immunity afforded under the more specific immunity statutes (SDCL 3-21-8 and 3-21-9) is not abrogated by insurance or risk pool participation under SDCL 21-32A-1.

[¶36.]        MEIERHENRY, Justice, joins this special writing.