#25409-a-JKK

**2010 SD 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

PERDUE, INC., a South Dakota
Corporation; RP SOUTH DAKOTA
REAL ESTATE LIMITED PARTNERSHIP,
a South Dakota Corporation; DONALD
PERDUE; and RICHARD PERDUE,                    Plaintiffs and Appellants,

v.

M. MICHAEL ROUNDS, Governor of the
State of South Dakota; TIM REISCH,
Secretary of the South Dakota Department
of Corrections; DON A. TEMPLETON,
Executive Secretary of the South Dakota
Building Authority; and AMES & LAMPY,
LLC, a South Dakota Limited Liability
Company,                                       Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE A. PETER FULLER
Judge

* * * *

ARGUED MARCH 22, 2010

OPINION FILED **05/05/10**

* * * *

GARY D. JENSEN of
Beardsley, Jensen, and Von Wald,
  Prof. LLC
Rapid City, South Dakota

MARTY J. JACKLEY
Attorney General

PATRICIA J. ARCHER
Assistant Attorney General
ROXANNE GIEDD
Deputy Attorney General
Pierre, South Dakota

Attorneys for plaintiffs
and appellants.

Attorneys for defendants
and appellees.

#25409

KONENKAMP, Justice

[¶1.] House Bill 1271 authorized the South Dakota Department of Corrections (DOC) to acquire land and buildings for a combined minimum security and parole facility in Rapid City. Section 8 of the bill stated that "prior to purchasing any property with the proceeds of the revenue bonds described in section 1," the DOC "shall conduct public meetings to solicit input from and share information with citizens, business owners, and school administrators located within two miles of the property to be purchased." In this declaratory judgment action, plaintiffs asked the circuit court to declare invalid a purchase agreement executed by the DOC before it held the required public meetings. The circuit court ruled that the execution of the purchase agreement was not a purchase as contemplated in the bill. Plaintiffs appeal, and we affirm because we conclude that the enactment was not violated.

## Background

[¶2.] In 2003, the Legislature passed House Bill 1280 allowing the DOC to acquire a 200-bed facility in the Black Hills for a minimum-security prison. In 2004, the DOC leased a building at 2317 Creek Drive in Rapid City, South Dakota. This facility was considered temporary while the DOC was considering prospects for a permanent site. One such prospect, near the temporary site, was proposed in House Bill 1060. The public objected, and the Legislature removed the site from consideration by amending the bill to allow the purchase of land near the Rapid City landfill. The landfill site was eventually abandoned by the DOC, and the search for a permanent site continued.

-1-

[¶3.] In early 2009, the DOC selected a building on Elk Vale Road in Rapid City. It sought legislative approval through House Bill 1271 (HB 1271). DOC Secretary Tim Reisch signed an agreement to purchase the property. But HB 1271 met public opposition and was amended to remove the Elk Vale Road property from consideration. The bill was also amended to include section 8:

> Prior to purchasing any property with the proceeds of the revenue bonds described in section 1, the secretary of the Department of Corrections shall conduct public meetings to solicit input from and share information with citizens, business owners, and school administrators located within two miles of the property to be purchased.

HB 1271 passed in the House on February 24, 2009, in the Senate on March 10, 2009, and Governor M. Michael Rounds signed it into law on March 12, 2009.

[¶4.] After the Elk Vale Road site was rejected, but before passage of HB 1271, DOC Secretary Reisch located another prospective property. It was owned by Ames & Lampy, LLC, and was near the temporary prison. On March 4, Secretary Reisch executed a purchase agreement with Ames & Lampy. The purchase agreement was conditioned on, among other things, HB 1271 passing. The agreement set the closing date for July 15, 2009.

[¶5.] After executing the purchase agreement, Secretary Reisch conducted a public meeting on April 29, 2009, to solicit input from and share information with nearby citizens, business owners, and school administrators in accord with the requirements of section 8 in HB 1271. A second meeting for the same purposes was held on May 18, 2009. One of the plaintiffs, Perdue, Inc., a South Dakota corporation with a furniture manufacturing business just south of the Ames & Lampy site, objected to the location selected. Perdue's owners, Donald and Richard

Perdue, attended the public meetings and expressed their opposition. They were concerned that the location of the prison would destroy the protections attendant to a heavy industrial zone. They also expressed concern that work release inmates walking to and from the prison would be negatively affected by the heavy semi-truck traffic, as well as by the noise, dust, and odors. In light of these concerns, they urged the DOC to seek an alternative site. Although Secretary Reisch proposed resolutions for many of the concerns expressed, he stated that no alternative sites would be considered because a purchase agreement had already been executed.

[¶6.] On July 1, 2009, plaintiffs brought suit against the State and its agencies for injunctive and declaratory relief.[1] The complaint sought a declaration that the DOC violated HB 1271 when it executed the purchase agreement before holding the required public meetings. According to plaintiffs, the execution of the purchase agreement was an act of "purchasing" under HB 1271, and the meetings were to be held "[p]rior to purchasing any property[.]" The DOC responded that the purchase agreement was only an agreement to purchase at a future date, and therefore, HB 1271 was not violated.

[¶7.] Following a bench trial, the circuit court issued oral findings of fact and conclusions of law. Even though Secretary Reisch had declined to consider alternative sites, the court found that no act of "purchasing" occurred simply because a purchase agreement was executed. Plaintiffs appeal asserting that the

---

1. The court denied plaintiffs' request for a preliminary injunction.

court erred when it concluded that HB 1271 was not violated and that it abused its discretion when it refused admission of certain evidence.[2]

## Analysis and Decision

[¶8.]    Resolution of this case hinges on the meaning of the clause "[p]rior to purchasing any property with the proceeds of the revenue bonds described in section 1, the secretary of the Department of Corrections shall conduct public meetings to solicit input from and share information with [people and entities] located within two miles of the property to be purchased." HB 1271, section 8. Nothing in this bill defines what is intended by the term "purchasing." Nor does this enactment specify any penalty for failure to hold the prescribed meetings. Plaintiffs maintain that the Legislature intended for the public meetings to be held before the execution of a purchase agreement based on the fact the Legislature amended HB 1271 after the public vehemently opposed the DOC's selection of the Elk Vale Road site. The resulting amendment, plaintiffs contend, was "intended to provide members of the public the opportunity to provide *meaningful* input prior to the decision to purchase property for the prison site." The State responds that no purchase had occurred at the time the public meetings were held because no property had yet been acquired by the State. Further supporting that nothing was

---

2.    Standard of Review: "Statutory construction is a question of law." *In re SDCL 15-24A-1*, 2010 SD 16, ¶10, 779 NW2d 158, 162 (citing *Wiersma v. Maple Leaf Farms*, 1996 SD 16, ¶4, 543 NW2d 787, 789 (citation omitted)). "'We interpret statutes in accord with legislative intent. Such intent is derived from the plain, ordinary and popular meaning of statutory language.'" *Id.* (quoting *Unruh v. Davison County*, 2008 SD 9, ¶5, 744 NW2d 839, 842). "'When a statute's language is clear, certain and unambiguous,

(continued . . .)

purchased, the State points to the fact that before the meetings no money or other consideration had been paid and no deed was transferred.

[¶9.]        Our rules of statutory construction require us to discern legislative intent based primarily on the language of the statute.  Zoss v. Schaefers, 1999 SD 105, ¶6, 598 NW2d 550, 552 (quoting South Dakota SIF v. CRE, 1999 SD 2, ¶17, 589 NW2d 206, 209 (quoting Delano v. Petteys, 520 NW2d 606, 608 (SD 1994))).  Although phrases using the terms "purchasing" and "purchased" have been construed by other courts in varying circumstances, we must give plain meaning and effect to these words in the context in which they were used in HB 1271.  We cannot consider such terms in isolation.

[¶10.]        Here, the language of HB 1271 provides in section 8 that public meetings be held "[p]*rior to purchasing* any property w*ith the proceeds of the revenue bonds* described in section 1."  (Emphasis added.)  The fact that "[p]rior to purchasing" precedes the phrase "with the proceeds of the revenue bonds" suggests that the public meetings would be held before the revenue bond proceeds would be used for acquiring the property.  Section 1 of HB 1271 authorizes issuance of revenue bonds to finance the project.  Although execution of a purchase agreement is a promise to pay an agreed price on certain terms and conditions for the acquisition of property, in the context of HB 1271, the language requires more than a promise to pay.  Moreover, Section 8 of HB 1271 refers to the "property *to be*

_____

(. . . continued)
        our function confines us to declare its meaning as plainly expressed.'"  *Id.*
        (quoting *Wiersma*, 1996 SD 16, ¶6, 543 NW2d at 790 (citations omitted)).

*purchased*," which indicates that at the time of the public meetings a site would already be selected for purchase. (Emphasis added.) Considering its plain language, HB 1271 requires that the DOC hold public meetings with landowners neighboring a site already selected, in order to solicit input and share information before *purchasing* the selected site *with the proceeds of the revenue bonds.* Since the public meetings were held before the revenue bond proceeds were used to purchase the property, the circuit court did not err when it held that HB 1271 was not violated by the DOC's execution of the purchase agreement.

[¶11.] Plaintiffs next contend that the circuit court abused its discretion when it denied admission of Marvin Howell's testimony. Mr. Howell would have testified about the harm his manufacturing business experienced in California when a similar correctional facility was placed near his business. The circuit court prohibited Mr. Howell from testifying because harm was irrelevant to whether the DOC violated HB 1271. Still, the court issued a conclusion of law stating, "There was no substantial credible evidence in this record to establish plaintiffs would be damaged; that plaintiffs would suffer economic loss; or that plaintiffs would suffer irreparable harm." On this conclusion of law, plaintiffs seek reversal to present evidence of harm. In their reply brief, however, plaintiffs concede that this issue would be moot if harm were not in issue. Because harm is not a consideration in our determination of whether HB 1271 was violated, we need not address whether the circuit court abused its discretion when it denied admission of Mr. Howell's testimony.

[¶12.] Affirmed.

[¶13.]      GILBERTSON, Chief Justice, and SEVERSON, Justice, and JENSEN, Circuit Court Judge, concur.

[¶14.]      MEIERHENRY, Justice, concurs specially.

[¶15.]      JENSEN, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

MEIERHENRY, Justice (concurring specially).

[¶16.]      I concur specially.  The purchase agreement was signed on March 4, 2009.  HB 1271 became law March 12, 2009.  It was not made retroactive.  Thus, the only means of compliance for the secretary of the DOC was to have hearings prior to closing on the property because the purchase agreement had already been signed.

[¶17.]      Additionally, I agree with Justice Konenkamp's analysis that the plain meaning of HB 1271 ties the public meetings to the use of revenue bonds to purchase the property.  The bill authorized financing of "up to six million dollars of the costs . . . through the issuance of revenue bonds."  It further allowed "[t]he Building Authority and Department of Corrections [to] accept, transfer, and expend any property or funds obtained for these purposes from federal sources, gifts, contributions, or any other source, all of which shall be deemed appropriated to the project authorized by this [Bill] in addition to the amounts otherwise authorized by this [Bill]."  The bill specifically rejected and denied approval of revenue bonds or other funding mechanisms to fund the purchase of the Elk Vale Road property.  Notwithstanding the specific references to other funding mechanisms in the prior

#25409

sections of HB 1271, the final section only required the public meetings "prior to purchasing any property with the proceeds of the revenue bonds."  Because the public meetings were held prior to the use of revenue bonds to purchase the property, the specific requirements of the enactment were met.