SUSAN (ERICKSON) HUTTON, PLAINTIFF v. MELANIE LOGAN, DEFENDANT

No. COA01-351

(Filed 6 August 2002)

**1. Negligence— contributory—common law rescue doctrine— Good Samaritan statute—reckless, wanton conduct, or intentional wrongdoing**

A defendant who rear-ended plaintiff's car was not required to show that plaintiff's actions of stopping her car on the road during a rescue attempt of a third person amounted to reckless, wanton conduct, or intentional wrongdoing before the court could find plaintiff contributorily negligent, because: (1) plaintiff's reliance on the common law rescue doctrine in the present case is misplaced when the doctrine allows the rescuer to maintain an action against the tortfeasor who caused the peril that necessitated the rescue attempt, and the tortfeasor was not defendant; and (2) N.C.G.S. § 20-166(d), the Good Samaritan statute, insulates the rescuer from liability for ordinary negligence from the person rescued only.

## 2. Negligence— contributory—directed verdict—parking on the traveled portion of a highway

The trial court did not err in an action arising out of an automobile accident by directing verdict in favor of defendant on the issue of contributory negligence as a matter of law on the basis of the statutory violation of N.C.G.S. § 20-161 which prohibits parking on the traveled portion of a highway, because: (1) while plaintiff may have raised a question of fact for the jury as to whether her stop was a necessary one, it is uncontested that she had no disabling condition which caused her to stop her vehicle in the eastbound traffic lane; and (2) it is negligence to park a vehicle on the paved surface of a highway where there is sufficient space to stop on the shoulders except in cases of disablement, and plaintiff herself acknowledged that her vehicle was not disabled.

Appeal by plaintiff from judgment entered 23 August 2000 by Judge Orlando F. Hudson in Orange County Superior Court. Heard in the Court of Appeals 22 January 2002.

*R. Bradley Miller for plaintiff appellant.*

*Moore & Van Allen, PLLC, by Lewis A. Cheek and Michael A. DeFranco, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff Susan (Erickson) Hutton appeals the trial court's granting of defendant Melanie Logan's motion for directed verdict entered 23 August 2000 finding that plaintiff was contributorily negligent as a matter of law.

The suit by plaintiff arose from an automobile accident that occurred on 19 January 1994 in Orange County. The accident occurred on Dairyland Road, which was described by plaintiff at trial as "a country road" through "beautiful rolling countryside." The accident happened around 5:00 p.m. on a clear but cold day.

Plaintiff was driving east through a curve described as long and sweeping. She came upon a wreck in which a car had gone into the ditch on the other side of the road. Plaintiff testified that "it looked real bad." Another car had stopped in the westbound lane apparently in an attempt to render assistance to the wrecked vehicle and driver. Plaintiff and the other car were the first to arrive on the scene.

Plaintiff slowed as she approached and stopped when her car pulled even with the car in the ditch. It was her intention to inform the driver of the other stopped vehicle that she would drive ahead and call 911. It was obvious to plaintiff that a rescue squad would probably be needed.

Although plaintiff had not noticed anyone behind her, defendant was following plaintiff. There is conflicting evidence as to whether plaintiff checked her rearview mirror, but plaintiff at best testified that she could not swear that she did, but that she usually does while driving. According to plaintiff, she had stopped for only a "flicker" when defendant struck her vehicle from behind. Defendant, traveling at approximately 50 m.p.h. left 29 feet of tire impressions on the road according to the officer on the scene. Plaintiff had not even had a chance to roll down her window before defendant hit her vehicle. Defendant stated to the officer that "she became distracted by [the car in the ditch] . . . [she] then turned her attention back to the roadway and saw [Ms. Erickson's car] stopped in the roadway and was unable to decrease speed and collided." The officer made no mention of anything potentially obstructing the view or vision of the path of the road through the curve.

At the point where plaintiff stopped her car, there was no shoulder on the right side of the road. There was shoulder area located before and after the accident site where a car could have parked so as to be completely out of the road. Defendant contends in her brief that there were also some bushes on the right side of the road just ahead of where plaintiff stopped her car that obstructed her view of the accident until she was upon it, although she never so testified at trial.

After the officer on the scene and plaintiff testified, defendant made a motion for a directed verdict on contributory negligence which was granted and entered on 23 August 2000. Plaintiff appeals.

Plaintiff makes the following assignment of error: The trial court's granting of defendant's motion for directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure at the conclusion of plaintiff's evidence, was error on the ground that plaintiff's evidence did not establish as a matter of law that plaintiff's own negligence contributed to the injury and damage suffered by her.

## I.

**[1]** Plaintiff first contends that her conduct cannot constitute contributory negligence unless it was found to be reckless, relying on the common law "rescue doctrine" and N.C. Gen. Stat. § 20-166(d) (2001). We disagree.

> The rescue doctrine requires a tortfeasor to anticipate the possibility "some bystander will yield to the meritorious impulse to save life or even property from destruction, and attempt a rescue." Thus, where applicable, the doctrine stretches the foreseeability limitation to help bridge the proximate cause gap between defendant's act and plaintiff's injury. . . .
>
> . . . .
>
> . . . This doctrine was intended to encourage the rescue of others from peril and immediate danger by insulating the rescuer from contributory negligence claims, and by holding the tortfeasor liable for any injury to the rescuer on the grounds a rescue attempt is foreseeable. The underlying premise recognizes the need to bring an endangered person to safety.

*Westbrook v. Cobb*, 105 N.C. App. 64, 69, 411 S.E.2d 651, 654 (1992) (citations omitted). Further,

> "[t]he rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made."

*Caldwell v. Deese*, 288 N.C. 375, 380, 218 S.E.2d 379, 382 (1975) (quoting *Alford v. Washington*, 238 N.C. 694, 78 S.E.2d 915 (1953)).

Plaintiff contends that she was a rescuer, and thus cannot be found to have been contributorily negligent in her actions involved with the rescue unless her attempt was recklessly made. Plaintiff's reliance on the rescue doctrine in the present case is misplaced. The doctrine allows the rescuer to maintain an action against the tortfeasor who caused the peril that necessitated a rescue attempt. It operates to prevent that tortfeasor from asserting contributory negligence as a defense to the rescuer's suit unless the rescuer's actions were indeed reckless. *See Britt v. Mangum*, 261 N.C. 250, 134 S.E.2d 235 (1964); *Partin v. Power and Light Co.*, 40 N.C. App. 630, 253

S.E.2d 605, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979). In the present case it is unclear who the tortfeasor was, but it was certainly not defendant. She in no way necessitated the rescue. The person to be rescued here may have in fact been the tortfeasor, in which case plaintiff would be able to benefit from the doctrine in a suit against her. Had plaintiff filed suit against the person in the ditch, if they were in fact negligent in ending up there, that party would have to show that plaintiff was reckless in stopping her vehicle where she did. Defendant was a third party who had nothing to do with the original peril. The common law rescue doctrine thus has no applicability as to defendant in this case.

Plaintiff also relies on N.C. Gen. Stat. § 20-166(d) (2001). This statute reads:

Any person who renders first aid or emergency assistance at the scene of a motor vehicle accident on any street or highway to any person injured as a result of such accident, shall not be liable in civil damages for any acts or omissions relating to such services rendered, unless such acts or omissions amount to wanton conduct or intentional wrongdoing.

*Id.* This statute, known as the "Good Samaritan" statute, was passed by the General Assembly in 1965. 1965 N.C. Sess. Laws ch. 176, § 1. However, we have been unable to find any cases from our courts that have dealt with or interpreted this statute. Thus, its interpretation is a matter of first impression.

"In construing the meaning of a statute, this Court must effectuate the intent of the legislature, which is revealed in 'the language of the statute, the spirit of the statute, and what it seeks to accomplish.'" *State v. Coronel*, 145 N.C. App. 237, 246, 550 S.E.2d 561, 568 (2001), *disc. review denied*, 355 N.C. 217, 560 S.E.2d 144 (2002) (quoting *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983)).

The plain language of the statute reveals that it seeks to insulate anyone who stops at the scene of an accident and renders assistance to someone injured in that accident from civil suit unless their actions were well beyond ordinary negligence. The statute, as written, appears open to interpretation on the question of the party from whom the rescuer is insulated: the one to whom he is rendering assistance or anyone the rescuer may come into contact with while he is rendering aid.

## HUTTON v. LOGAN

[152 N.C. App. 94 (2002)]

Defendant submits that N.C. Gen. Stat. § 20-166(d) only applies to the persons to whom the services are rendered, and not a later-appearing third party. Accordingly, a rescuer could not be sued successfully in negligence by one that he or she has rescued unless his or her acts amounted to wanton conduct or intentional wrongdoing. Yet the rescuer could be held liable for his or her own ordinary negligence during the course of the rescue to any other third party.

On the other hand, the language in our statute does not appear to mandate this result. The insulating terms of our statute are very broad: "Any person who renders first aid or emergency assistance . . . shall not be liable in civil damages for any acts or omissions relating to such services rendered[.]" This broad language could be read to include ordinary negligence as it pertained to third parties. Take, for instance, the facts in the present case: a would-be rescuer stopped in the road, perhaps negligently, to render assistance. A third party rear-ends the rescuer and sues the rescuer in negligence. The stopping on the road to render assistance by the rescuer qualifies as services rendered. The statute says that the rescuer cannot be held liable for negligence relating to "such services rendered" unless they were proven to amount to wanton conduct or intentional wrongdoing.

Suffice it to say that our legislature could have included more language and made clearer their true intent. *See, e.g., Maine's Good Samaritan Statute:*

> [A]ny person who voluntarily, without the expectation of monetary or other compensation from the person aided or treated, renders first aid, emergency treatment or rescue assistance to a person who is unconscious, ill, injured or in need of rescue assistance, shall not be liable for damages for injuries *alleged to have been sustained by such person nor for damages for the death of such person alleged to have occurred by reason of an act or omission in the rendering of such first aid, emergency treatment or rescue assistance,* unless it is established that such injuries or such death were caused willfully, wantonly or recklessly or by gross negligence on the part of such person.

Me. Rev. Stat. Ann. T. 14, § 164 (2001).

Plaintiff in the present case would benefit from N.C. Gen. Stat. § 20-166(d) if the broad language allowed her to assert an in-

creased standard of accountability as a reply to the implication of contributory negligence, and thus be insulated as to the third party, Ms. Logan.

A glance at the phenomenon of Good Samaritan statutes across the country reveals the intent behind them. "Good Samaritan statutes are generally designed to protect individuals from civil liability for any negligent acts or omissions committed while voluntarily providing emergency care." Danny R. Veilleux, J.D., Annotation, *Construction and Application of "Good Samaritan" Statutes*, 68 A.L.R. 4th 294, 299-300 (citing "Good Samaritan Laws—The Legal Placebo: A Current Analysis," 17 Akron L. Rev. 303 (Fall 1983)); *see also* Jerry M. Trammell, *Torts—North Carolina's "Good Samaritan" Statute*, 44 N.C.L. Rev. 508 (1966). Most states passed a version of these statutes after the first one passed in 1959. *Id.*

The statutes generally attempt to eliminate the perceived inadequacies of the common-law rules, under which a volunteer, choosing to assist an injured person although having no duty to do so, was liable for failing to exercise reasonable care in providing the assistance.

. . . .

The classes of persons protected by Good Samaritan legislation vary, and some jurisdictions have a number of statutes, each extending immunity to a different class. Many jurisdictions extend immunity to all persons administering emergency care; others limit coverage to specified medical personnel or to physicians alone. Good Samaritan statutes often require the person providing the emergency care to do so "in good faith" and without expecting payment for the assistance in order to qualify for the statutory immunity. Some statutes limit immunity to emergency aid provided in specific locations, and some to aid exercised according to a specific standard of conduct.

Annotation, "Good Samaritan" Statutes, 68 A.L.R.4th 300-01 (1989). The general concentration of these statutes is on insulating the rescuer from liability for negligence to the person rescued. There may be a difference of opinion as to which party is insulated from liability, but there seems to be no debate as to the party from whom they are insulated. No jurisdiction has apparently said that a Good Samaritan has immunity for ordinary negligence as to anyone, be it the person rescued or third party alike.

While our legislature could have been more precise in its language granting immunity to the Good Samaritan, we hold that N.C. Gen. Stat. § 20-166(d) insulates the rescuer from liability for ordinary negligence from the person rescued only. In light of the intent behind Good Samaritan statutes to remedy the gap left by the common law in allowing the person rescued to sue the rescuer, it does not appear reasonable that our legislature intended to provide a blanket immunity as to all persons other than the person rescued. Rescuers must stand on their own and defend suits maintained by third parties who were allegedly injured as a result of the rescuer's negligent conduct during the rescue attempt.

These contentions are overruled. Defendant was not required to show that plaintiff's actions during the rescue attempt amounted to reckless, wanton conduct, or intentional wrongdoing before the court could find plaintiff contributorily negligent. We now review the granting of the directed verdict on the basis that plaintiff's actions were negligent as a matter of law.

II.

[2] Plaintiff contends that the trial court erred in granting defendant's motion for directed verdict on the ground that plaintiff was contributorily negligent as a matter of law. We disagree.

" '[A] directed verdict for defendant on the basis of contributory negligence [is] proper only if the evidence, taken in the light most favorable to the plaintiff [establishes plaintiff's][] negligence so clearly that no other reasonable conclusion could [be] drawn therefrom.' " *Kutz v. Koury Corp.*, 93 N.C. App. 300, 304-05, 377 S.E.2d 811, 814 (1989) (quoting *Fields v. Chappell Associates*, 42 N.C. App. 206, 208, 256 S.E.2d 259, 260 (1979)).

Defendant alleged in her answer and in her motion for directed verdict that plaintiff violated N.C. Gen. Stat. § 20-161(a) which prohibits parking on the traveled portion of a highway.

N.C. Gen. Stat. § 20-161 is a safety statute which regulates stopping on the highway. It reads:

(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled portion of any highway or highway bridge outside municipal corporate limits unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the

vehicle upon the paved or main traveled portion of the highway or highway bridge.

(b) No person shall park or leave standing any vehicle upon the shoulder of a public highway outside municipal corporate limits unless the vehicle can be clearly seen by approaching drivers from a distance of 200 feet in both directions and does not obstruct the normal movement of traffic.

N.C. Gen. Stat. § 20-161(a), (b) (2001). "It is well established that an unexcused violation of N.C.G.S. 20-161 is negligence per se. To be actionable, negligence in parking a vehicle on a public highway in violation of this statute must be a proximate cause of the injury in suit." *Adams v. Mills*, 312 N.C. 181, 188, 322 S.E.2d 164, 169 (1984) (citations omitted).

A preliminary question is whether plaintiff's vehicle was located on the highway when the accident occurred. This point is uncontested by the parties. There is ample evidence in the record, including plaintiff's admission, that her vehicle was located on the road when the collision occurred, and her vehicle was not disabled.

Thus, we now turn to the question of whether plaintiff's evidence proves a statutory violation as a matter of law. "In construing G.S. 20-161(a) our courts have defined "parking" to be more than a temporary or momentary stop for a necessary purpose." *Smith v. Pass*, 95 N.C. App. 243, 250, 382 S.E.2d 781, 786 (1989); *see Adams*, 312 N.C. at 190, 322 S.E.2d at 170 (stating, "the words 'park' and 'leave standing' in N.C.G.S. 20-161 have been construed so as to exclude a mere temporary or momentary stoppage for a necessary purpose."). *Id.* However, a motorist wishing to avail him or herself of this defense to a statutory violation must meet a two-part test defined as follows:

In determining whether a violation of G.S. 20-161(a) has occurred, the trier of fact must consider whether the stop, even if temporary, was for a necessary purpose *and* " 'under such conditions that it [was] impossible to avoid leaving such vehicle in such a position.' "

*Smith*, 95 N.C. App. at 250, 382 S.E.2d at 786 (emphasis added) (quoting *Melton v. Crotts*, 257 N.C. 121, 129, 125 S.E.2d 396, 402 (1962) (quoting *Capital Motor Lines v. Gillette*, 235 Ala. 157, 177 So. 881 (1935)). "Whether a vehicle stopped on the travel portion of the road was for a necessary purpose is 'ordinarily a question for the jury

unless the facts are admitted.' " *Id.* at 256, 382 S.E.2d at 789 (quoting *Melton*, 257 N.C. at 130, 125 S.E.2d at 402)).

Here, plaintiff admitted in her trial testimony that she deliberately chose to stop her vehicle in the eastbound lane of travel. Plaintiff also acknowledged that there were other nearby locations where the shoulder offered ample room to park her vehicle without obstructing her lane of travel. While she may have raised a question of fact for the jury as to whether her stop was a "necessary" one, it is uncontested that she had no disabling condition which caused her to stop her vehicle in the eastbound traffic lane.

As the *Adams* Court noted, "[e]*xcept in cases of disablement*, it is negligence to park a vehicle on the paved surface of a highway when there is sufficient space to stop on the shoulders." *Adams*, 312 N.C. at 188, 322 S.E.2d at 169 (emphasis added). As the plaintiff herself acknowledged that her vehicle was not disabled, it was proper for the trial court to direct a verdict in favor of defendant.

In light of our ruling that the trial court's order directing verdict in favor of defendant on the issue of contributory negligence as a matter of law on the basis of the statutory violation of N.C. Gen. Stat. § 20-161 was proper, the ruling below is

Affirmed.

Chief Judge EAGLES and Judge CAMPBELL concur.