#25216-JKK

**2010 SD 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

In the Matter of the CERTIFICATION OF A QUESTION OF LAW FROM THE
UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH DAKOTA,
SOUTHERN DIVISION, Pursuant to the Provisions of SDCL 15-24A-1, and
Concerning Federal Action Civ. 07-4163, Titled as Follows:


MANDI LEIGH GRONSETH,                                          Plaintiff,

v.

CHESTER RURAL FIRE PROTECTION
DISTRICT and CHESTER FIRE
DEPARTMENT,                                                   Defendants.

\* \* \* \*

ORIGINAL PROCEEDING

\* \* \* \*

NATALIE D. DAMGAARD
A. RUSSELL JANKLOW of
Janklow Law Firm, Prof, LLC
Sioux Falls, South Dakota
and
PETER I. GREGORY
Sioux Falls, South Dakota                    Attorneys for plaintiff.

PAUL H. LINDE
MICHAEL J. SCHAFFER of
Schaffer Law Office, Prof., LLC
Sioux Falls, South Dakota                    Attorneys for defendants.

\* \* \* \*

ARGUED JANUARY 12, 2010

OPINION FILED **02/17/10**

#25216

KONENKAMP, Justice

[¶1.] In answer to a certified question from the United States District Court for the District of South Dakota, we conclude that a fire fighter driving to a fire hall to respond to a fire call is rendering emergency care or service under SDCL 20-9-4.1.

**Background**

[¶2.] Tim Bauman is a volunteer fire fighter for the Chester Fire Department, in the Chester Rural Fire Protection District. He and his wife were in Wentworth, South Dakota, attending a Fourth of July celebration when Bauman received a page from the Department to respond to a fire. Bauman drove his personal pickup on the way to the fire hall, with his wife, Cheryl, as a passenger. Cheryl is a volunteer first responder. Bauman traveled south on Lake County Road 15, with his pickup's flashing lights on. He was speeding.

[¶3.] Also traveling on Lake County Road 15 was Areyman Gabriel, with Mandi Gronseth as a passenger. Gabriel was driving Gronseth's car and traveling north on Lake County Road 15. Gabriel attempted to make a left-hand turn onto Horizon Heights Road at the same time Bauman's pickup came over a hill on Lake County Road 15. The two vehicles collided in Bauman's lane of travel. Gronseth was severely injured.

[¶4.] Gronseth brought suit against Bauman, the Chester Rural Fire Protection District, and the Fire Department in the United States District Court for the District of South Dakota. Gronseth alleged that Bauman was negligent and that such negligence proximately caused her injuries. She further asserted that the

-1-

Fire District and Department were liable for Bauman's negligence under the theory of respondeat superior. Gronseth later dismissed her claim against Bauman.

[¶5.] The Fire District and Department moved for summary judgment asserting, among other things, that, under SDCL 20-9-4.1, they were not liable to Gronseth. Known as the "Good Samaritan statute," SDCL 20-9-4.1 provides:

> No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person is liable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages shall extend to the operation of any motor vehicle in connection with any such care or services.
>
> Nothing in this section grants any such relief to any person causing any damage by his willful, wanton or reckless act of commission or omission.

[¶6.] According to the Fire District and Department, when Bauman was driving his pickup to the fire hall in response to an emergency fire call, he was "rendering" emergency care or service. Because this Court has not yet interpreted SDCL 20-9-4.1 and the United States District Court recognized that whether SDCL 20-9-4.1 applies is determinative of whether the Fire District and Department can be liable for negligence, the court certified the following question to this Court.[1]

> The Defendant driver was driving his own vehicle to the fire hall from which the firemen would then drive an emergency vehicle

---

1. "Technically, this Court does not sit as an appellate court in this case as the matter came to us as a certified question from the United States District Court for the District of South Dakota. Nevertheless, we employ the same legal standards for this analysis that we use when reviewing appellate cases." Unruh v. Davison County, 2008 SD 9, ¶5, 744 NW2d 839, 841-42.

to the scene of the fire. Is the driving to the fire hall "any emergency care or services during an emergency . . . ." so that SDCL 20-9-4.1 would preclude liability to Plaintiff passenger unless Plaintiff showed the causing of "any damage by [Defendant's] willful, wanton or reckless act of commission or omission"?

## Analysis and Decision

[¶7.]     Good Samaritan statutes, in various forms, have been adopted by nearly every state in the nation. Although these statutes are similar, in the sense they were adopted to encourage people to assist in emergency situations, the scope of the conduct protected by these statutes varies widely. Some statutes only protect the actions of medical personnel or specific emergency providers.[2] Other statutes, while possibly applicable to ordinary citizens, limit liability only for conduct occurring at the location of the emergency or service and provided to the injured person.[3] Still other statutes limit liability for the use of a motor vehicle, but only if

---

2.     CalBus&ProfCode 2395; ConnGenStat 52-557b; IndCodeAnn 16-31-6-1; KyRevStatAnn 411.148; MichCompLawsAnn 691.1502; MissCodeAnn 73-25-37; NCGSA 90-21.16.

3.     AlaCode 6-5-332; ArizRevStatAnn 32-1471; ArkCodeAnn 17-95-101; CalBus&ProfCode 2395; ColoRevStat 13-21-108; DCCodeAnn 7-401; GaCodeAnn 51-1-29; HawRevStat 663-1.5; IdahoCode 5-330; IowaCodeAnn 613.17; KanStatAnn 65-2891; KyRevStatAnn 411.148; MdCodeAnnCts&JudProc 5-603; MinnStatAnn 604A.01; MoAnnStat 537.037; MontCodeAnn 27-1-714; NebRevStat 25-21,186; NHRevStatAnn 508:12; NJStatAnn 2A:62A-1; NMStatAnn 24-10-3; OhioRevCodeAnn 2305.23; 42 PaConsStatAnn 8332; SCCodeAnn 15-1-310; TennCodeAnn 63-6-218; VaCodeAnn 8.01-225; WashRevCodeAnn 4.24.300; WVaCode 55-7-15; WisStatAnn 895.48; WyoStat 1-1-120.

the person providing emergency care is using the vehicle to transport an injured person.[4]

[¶8.]    Our review of these statutes reveals no statutory language similar to, or as broad as, South Dakota's enactment in the sense that South Dakota limits liability for any person's "operation of any motor vehicle in connection with any such care or services." *See* SDCL 20-9-4.1. Moreover, we can find no fact situation in other jurisdictions similar to the one presented here.[5]  So when do volunteer fire fighters begin *rendering* emergency *care or service* under SDCL 20-9-4.1?[6]  Does the *rendering* begin only after fire fighters leave the fire hall in an emergency vehicle or when fire fighters start driving from wherever they are after receiving the call to respond?

[¶9.]    The Fire District argues that the Legislature intended to include within the scope of the statute those persons who use a vehicle in order to provide an emergency service when it limited liability for "the operation of any motor

---

4.    IdahoCode 5-330; IowaCodeAnn 613.17; MdCodeAnnCts&JudProc 5-603; MinnStatAnn 604A.01; MissCodeAnn 73-25-37; NJStatAnn 2A:62A-1; 42 PaConsStatAnn 8332; TennCodeAnn 63-6-218; VaCodeAnn 8.01-225; WashRevCodeAnn 4.24.300.

5.    Unlike the North Carolina statute, which the dissent would engraft on South Dakota law, South Dakota's Good Samaritan statute is not limited to actions occurring "at the scene" of an accident. The North Carolina statute shields liability for a rescuer's negligence "at the scene of a motor vehicle crash on any street or highway to any person injured as a result of the accident[.]" NCGSA 20-166(d).

6.    We are asked the limited question whether driving to the fire hall in a personal vehicle in response to a fire call is "any emergency care or services during an emergency" under SDCL 20-9-4.1. The fact Bauman was speeding is immaterial to our answer.

vehicle in connection with any such care or services." *See* SDCL 20-9-4.1. Gronseth, on the other hand, contends that the statute was designed to protect providers of emergency care from liability for harm caused to the person they are serving or providing care to, not an innocent bystander. She further argues that Bauman was not *rendering* any emergency care or service when he was driving to the fire hall in his personal pickup.

[¶10.]     This case requires us to construe SDCL 20-9-4.1. Statutory construction is a question of law. Wiersma v. Maple Leaf Farms, 1996 SD 16, ¶4, 543 NW2d 787, 789 (citation omitted). "We interpret statutes in accord with legislative intent. Such intent is derived from the plain, ordinary and popular meaning of statutory language." *Unruh*, 2008 SD 9, ¶5, 744 NW2d at 842 (citation omitted). "When a statute's language is clear, certain and unambiguous, our function confines us to declare its meaning as plainly expressed." *Wiersma*, 1996 SD 16, ¶6, 543 NW2d at 790 (citations omitted).

[¶11.]     SDCL 20-9-4.1, as implicated in this case, provides:

> No . . . member of any fire department . . . is liable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages shall extend to the operation of any motor vehicle in connection with any such care or services.

We must determine whether, under the facts of this case, driving a personal pickup to the fire hall in response to an emergency call is an act arising out of and in the course of rendering any emergency care or service.

[¶12.]　　　　An "emergency" is "a sudden, urgent, usually unforeseen occurrence or occasion requiring immediate action." Webster's Encyclopedic Unabridged Dictionary of the English Language 467 (1994); *see also* Culhane v. Equitable Life Assur. Soc. of the United States, 65 SD 337, 338, 274 NW2d 315, 318 (1937) (defining emergency). To "render" means "to do; perform; to furnish; provide" as in "to render a service" or "to render aid." Webster's Encyclopedic Unabridged Dictionary of the English Language 1214 (1994). "Service" is defined as "an act of helpful activity; help; aid." *Id*. at 1304.

[¶13.]　　　　Examining the words of the statute used in their ordinary sense, we conclude that the Legislature intended to protect the very type of service provided by Bauman under the question presented. Bauman is a "member of any fire department[.]" Acting in his capacity as a fire fighter, he responded to his pager call by driving to the fire hall in his personal vehicle. The fire was clearly an emergency. The act of driving to the fire hall arose out of and in the course of Bauman's rendering emergency service during the emergency. He would not have otherwise been able to respond to the call absent driving his personal pickup to the fire hall.[7] Therefore, as part of his service and his rendering of aid, Bauman drove his personal vehicle. In driving his personal vehicle to the fire hall to respond to the

---

7.　　The dissent concludes that Bauman's "actions occurred prior to his actually providing the firefighting services and clearly were removed from the scene of the emergency." Yet Bauman was not driving on the highway for personal reasons. His driving was necessitated by the fire call and was thus intrinsic to rendering emergency service. The dissent's "removed from the scene" limitation would also exclude from liability protection those driving fire trucks on the way to a fire.

emergency fire call, Bauman rendered aid for another during the course of an emergency, sufficient to implicate SDCL 20-9-4.1. Finally, because "the operation of *any motor vehicle* in connection with any such care or services" is encompassed by the statute, Bauman's use of his personal pickup was included within the scope of the statute's limitation of liability. *See* SDCL 20-9-4.1 (emphasis added).

[¶14.] To conclude that one does not render emergency care or service until life-saving, affirmative actions are taken would frustrate the broad intent of the statute. Further, to construe the statute to limit liability only against those receiving care and not third-party bystanders, as the dissent advocates, violates our rule of statutory construction in which we are to declare the meaning of the statute as plainly expressed. *See Wiersma*, 1996 SD 16, ¶6, 543 NW2d at 790 (citation omitted). A rescuer is shielded from liability for "any civil damages," not just civil damages related to the person receiving the emergency care or service. *See* SDCL 20-9-4.1; see also statutes cited in note 3 applicable to those receiving the emergency care or service.

[¶15.] Indeed, the purpose of the statute is to encourage persons to provide emergency care or services without fear of liability. *See* Thompson v. Summers, 1997 SD 103, ¶19 n6, 567 NW2d 387, 394 n6. A review of the legislative history surrounding SDCL 20-9-4.1 reveals that the Legislature intended a broad shield from liability for South Dakota rescuers. Originally enacted in 1968, the last sentence of SDCL 20-9-4.1 stated, "Such relief from liability for civil damages shall *not* extend to the operation of any motor vehicle in connection with any such care or services." (Emphasis added.) When the statute was amended in 1970, the

Legislature retained the language refusing to extend relief to the operation of "any motor vehicle[.]" In 1980, however, the Legislature amended SDCL 20-9-4.1 and specifically removed "not" from the last sentence. This amendment is a strong indication that the Legislature intended broad liability protection.[8]

[¶16.] Therefore, considering the question posed to us, the act of this volunteer fire fighter driving to the fire hall in a personal vehicle in response to an emergency fire call is included within the language "any emergency care and services," so that SDCL 20-9-4.1 would preclude liability unless Gronseth shows that Bauman's conduct was "willful, wanton or reckless[.]"

[¶17.] We answer the United States District Court's question in the affirmative.

[¶18.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, concur.

[¶19.] MEIERHENRY, Justice, dissents.

---

8. We cannot conflate, as the dissent does, a statute declaring standards for emergency vehicles and their drivers with a statute limiting civil damage liability for operating motor vehicles in connection with rendering care or services during an emergency. One statute sets standards; the other limits liability. But even if we were to merge these statutes, they can still be read harmoniously. Neither SDCL 20-9-4.1, nor the statutes the dissent cites protect "any person causing any damage by his willful, wanton or reckless act of commission or omission." *Id*. In this regard the statutes are consistent. SDCL ch. 32-31 does not "protect the driver from the consequences of his reckless disregard for the safety of others." *See* SDCL 32-31-5.

MEIERHENRY, Justice (dissenting).

[¶20.] I respectfully dissent. Although the language of SDCL 20-9-4.1 broadly grants immunity for civil liability to those rendering emergency care and services, the immunity is not unlimited. The statute specifically protects those named in the statute from civil liability "for any civil damages as a result of their acts of commission or omission *arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time.*" *Id.* (emphasis added). The key and limiting language of the statute lies in the requirement that the protected act "aris[e] out of *and* in the course of rendering . . . emergency care and services *during an emergency.*" *Id.* (emphasis added). I would not interpret this language to mean the Legislature intended to protect a volunteer fireman who speeds on his way to the fire station or fire on a public highway in his own vehicle without emergency lights or other method of warning to other motorists or pedestrians. Responding to a fire alarm is not technically "rendering emergency care and services during an emergency." Thus, speeding on a public highway cannot be said to "aris[e] out of and in the course of rendering the emergency . . . services," i.e., putting out a fire. Here, the fireman's actions occurred prior to his actually providing the firefighting services and clearly were removed from the scene of the emergency.

[¶21.] Additionally, I question whether the Legislature intended to extend the Good Samaritan immunity of SDCL 20-9-4.1 beyond the person or persons receiving the emergency aid. Did the Legislature mean to remove protection for third party bystanders who, like those here, were unaware there was an emergency

and had not received advance warning to protect themselves? The statute does not explicitly address this. The majority opinion's interpretation of SDCL 20-9-4.1 effectively adds language to the statute and prevents "any and all injured persons" from bringing a negligence claim, thus reading:

> No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person is liable *to any and all injured persons* for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time.

*Id.* I disagree that this Court should assume that the Legislature intended such broad immunity.

[¶22.] Legislative intent can also be gleaned from other statutes that specifically address the duty of care of emergency vehicle drivers. *See* Rotenberger v. Burghduff, 2007 SD 7, ¶8, 727 NW2d 291, 294 ("We give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject." (quoting Chapman v. Chapman, 2006 SD 36, ¶11, 713 NW2d 572, 576)). Emergency vehicles are allowed to exceed the speed limit but must give warning. An emergency vehicle must have "an audible siren or air horn or both or display[] flashing, oscillating, or rotating beams of red light or combinations of red, blue, or white light visible one hundred eighty degrees to the front of the vehicle" to "warn[] the public of the presence of an emergency vehicle" before it is lawfully permitted to exceed the speed limit. SDCL 32-31-4. Additionally, SDCL 32-31-5 requires the operator of an emergency vehicle to drive "with due regard for the

safety of all persons" and provides that the provisions of SDCL ch. 32-31 do not "protect the driver from the consequences of his reckless disregard for the safety of others." *Id.* Finally, SDCL 32-26-15 provides that SDCL ch. 32-26 does not "relieve the driver of a police, fire department vehicle, or ambulance from the duty to drive with due regard for the safety of all persons using the highway nor does it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right-of-way." *Id.* These statutes, collectively, require greater precautions for emergency vehicles and provide less protection to the trained emergency drivers than those afforded to Bauman under the majority opinion's interpretation of SDCL 20-9-4.1. These other statutes read in conjunction with SDCL 20-9-4.1 demonstrate that the Legislature intended that drivers of emergency vehicles, as well as those driving their own vehicles to an emergency, have a "duty to drive with due regard for the safety of all persons using the highway." The Legislature did not intend to confer such broad immunity under SDCL 20-9-4.1 as interpreted by the majority.

[¶23.]     Likewise, without more clarity as to whether the Legislature actually intended to include persons other than those rescued, we should show judicial restraint and interpret the statute narrowly. One court addressing a similar situation recognized that "[t]he general concentration of [Good Samaritan] statutes is on insulating the rescuer from liability for negligence *to the person rescued.*" Hutton v. Logan, 566 SE2d 782, 787 (NC Ct App 2002) (emphasis added). The *Hutton* court also held that

> While [the] legislature could have been more precise in its language granting immunity to the Good Samaritan, *we hold that [our Good Samaritan statute] insulates the rescuer from liability for ordinary negligence from the person rescued only.* In

light of the intent behind Good Samaritan statutes to remedy the gap left by the common law in allowing the person rescued to sue the rescuer, *it does not appear reasonable* that our legislature intended to provide a blanket immunity as to all persons other than the person rescued. Rescuers must stand on their own and defend suits maintained by third parties who were allegedly injured as a result of the rescuer's negligent conduct during the rescue attempt.

*Id.* (emphasis added). The reasoning of the North Carolina Court of Appeals recognizes that construction of Good Samaritan statutes favors narrow interpretation to ensure reasonable results.

[¶24.] In contrast, the majority opinion's holding places few limits on the application of SDCL 20-9-4.1. As recognized at oral argument, such a broad interpretation of SDCL 20-9-4.1 would permit anyone who in good faith believes an emergency requires his services to negligently drive a motor vehicle on the streets or highways with immunity from any damages he might inflict. It is questionable that the Legislature intended such a broad grant of immunity. *See* State v. Burdick, 2006 SD 23, ¶26, 712 NW2d 5, 11 ("We continually profess our canon of construction which requires us to avoid interpreting a statute so as to achieve an absurd result.") (citation omitted) (Meierhenry, J., dissenting).

[¶25.] For the reasons stated, I dissent.