[Cite as *Carter v. Reese*, 2014-Ohio-5395.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


DENNIS CARTER,                                    :

    Plaintiff-Appellant,                      :            CASE NO.   CA2014-04-095

                                              :            O P I N I O N
  - vs -                                                       12/8/2014

                                              :

LARRY REESE, JR., et al.,                         :

    Defendants-Appellees.                     :


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. 2012-09-3942


Eric C. Deters & Partners, P.S.C., Stephanie Collins, 5247 Madison Pike, Independence, KY 41051-7941, for plaintiffs-appellants, Dennis & Mary Carter

Markesbery & Richardson Co., LPA, Katherine A. Clemons, Glenn A. Markesbery, 2258 Victory Parkway, Suite 200, P.O. Box 6491, Cincinnati, Ohio 45206, for defendant-appellee, Larry Reese, Jr.

Andrew D. Bowers, Jackie M. Jewell, Special Counsel for the Attorney General, 612 North Park Street, Suite 300, Columbus, Ohio 43215, for appellee/third party plaintiff, Ohio Bureau of Workers' Comp.


**HENDRICKSON, J.**

{¶ 1}   Plaintiff-appellant, Dennis Carter, appeals the decision of the Butler County Common Pleas Court granting summary judgment in favor of defendant-appellee, Larry Reese, Jr., on appellant's negligence complaint against appellee in which appellant alleged

that appellee failed to exercise ordinary care in coming to appellant's rescue, which necessitated the amputation of appellant's right leg above the knee. For the reasons that follow, we affirm the judgment of the trial court.[1]

{¶ 2} Appellant was employed as a truck driver for S&S Transfer, Inc. On April 24, 2012, appellant delivered an empty trailer to AIC Contracting, Inc., in Fairfield, Ohio. After unhooking the empty trailer, he pulled his tractor into AIC's loading dock area and hooked up another trailer. He drove the rig forward approximately four to six inches so he could close the roll-down back door to the trailer. He locked the tractor brake but left the trailer brake "open" or disengaged. When he grabbed the trailer to pull himself up on the loading dock, his right leg slipped down between the loading dock and the trailer and he became stuck. He started beating on the doors of the loading dock and screaming for help, in order to get someone's attention. However, he would later testify at his deposition that he was not in pain at this time

{¶ 3} Approximately ten minutes after he started screaming for help, appellant saw a pick-up truck pull into a company across the street. He kept screaming to get the driver's attention. He then saw the pick-up truck come back out. The next thing he heard was the voice of a young man asking, "Can I help you?" Appellant could not see the man because of the way in which his leg was pinned between the loading dock and the trailer, but he believed the man to be "young" due to the sound of his voice. When the man asked appellant "what can I do?," appellant said to him, "get in my truck, move it forward about a foot, * * * but whatever you do, don't put it in reverse." Appellant heard the man say "no problem."

{¶ 4} The next thing appellant heard was his truck being "revved up." He then heard his truck being revved up again for a little bit longer, which began to cause him concern. He

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

then heard his truck being revved up for a third time, and in between that revving, he heard the sound "psssssh," which signaled that the truck's air brake had been released. Within five seconds of that sound, the truck started rolling backwards. Appellant put both hands against the back of the truck, trying in vain to stop it. Appellant heard his leg break in three places, "pop, pop, pop," and then felt "sheer pain." Appellant "screamed [his] head off." He looked down and saw blood "just squirt everywhere down [his] leg." Thirty seconds later, he heard a man say, "Oh, I'm sorry, Bud. I can't get it in gear." Appellant told him, "It's too damn late now. You've done crushed my leg." The man, whom appellant did not see, replied "Oh, my God. Oh, my God. Oh, my God." Appellant told the man to call 911. Appellant never saw the man who tried to help him and never heard from that man again.

{¶ 5} When the ambulance arrived approximately four minutes later, another man, who was later identified as Jason Burnett, told the paramedics he could move the truck, which he then did, thereby freeing appellant. By this time, however, appellant had suffered considerable blood loss. Appellant was transported by helicopter to University Hospital where his right leg had to be amputated above the knee.

{¶ 6} The man who tried unsuccessfully to help appellant was later identified as appellee. Appellee testified in his deposition that appellant was already injured when he arrived. Appellee acknowledged that he climbed into the cab of the semi-truck but decided not to try to drive it upon realizing that he did not know how to drive such a vehicle. Appellee testified that he went back to comfort appellant and called 911.

{¶ 7} Appellant and his wife filed a complaint against appellee in the Butler County Common Pleas Court, alleging that appellee failed to exercise reasonable care while operating the semi-truck. Appellee moved for summary judgment. The trial court granted summary judgment to appellee on appellant's complaint, finding that Ohio's "Good Samaritan" statute codified in R.C. 2305.23 applied and protected appellee from any liability

- 3 -

since appellee's actions in attempting to move the semi-truck did not constitute willful or wanton misconduct.

{¶ 8} Appellant now appeals and assigns the following as error:

{¶ 9} THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 10} Appellant argues the trial court erred in granting summary judgment to appellee, because (1) genuine issues of material fact exist in this case, including who was at fault in the accident, and (2) his "predicament" of having his right leg "trapped" but "unharmed" between his stopped semi-truck and the loading dock did not satisfy the "Emergence Care" [sic] standard in R.C. 2305.23.

{¶ 11} This court's review of a trial court's ruling on a motion for summary judgment is "de novo." *Grizinski v. Am. Express Fin. Advisors, Inc.,* 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "De novo" review means that this court uses the same standard the trial court should have used. *Morris v. Dobbins Nursing Home,* 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14. Summary judgment is appropriate when there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.,* 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). "All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made." *Morris* at ¶ 15.

{¶ 12} R.C. 2305.23, which is captioned, "Liability for emergency care," states:

> No person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton

misconduct.

> Nothing in this section applies to the administering of such care or treatment where the same is rendered for remuneration, or with the expectation of remuneration, from the recipient of such care or treatment or someone on his behalf. The administering of such care or treatment by one as a part of his duties as a paid member of any organization of law enforcement officers or fire fighters does not cause such to be a rendering for remuneration or expectation of remuneration.

{¶ 13} We begin by addressing appellant's argument that his "predicament" of having his right leg "trapped" but "unharmed" between his stopped semi-truck and the loading dock did not satisfy the "Emergence Care" [sic] standard in R.C. 2305.23." Appellant contends that R.C. 2305.23 applies only to *medical* emergencies and protects only "health care professionals from liability during truly emergent circumstances" and that, conversely, R.C. 2305.23 does not apply to "non-medically trained individuals." We disagree with these arguments.

{¶ 14} Every state has enacted some type of Good Samaritan statute. Annotation, *Construction and Application of "Good Samaritan" Statutes,* 68 A.L.R.4th 294, Section 2[a] (1989), citing Brandt, *Good Samaritan Laws—The Legal Placebo: A Current Analysis*, 17 Akron L. Rev. 303 (1983). The scope of the immunity protection provided in a Good Samaritan statute varies from jurisdiction to jurisdiction. Waisman, *Negligence, Responsibility, and the Clumsy Samaritan: Is There a Fairness Rationale For The Good Samaritan Immunity?*, 29 Ga. St. U. L. Rev. 609, 631 (2013). The Good Samaritan statutes in a substantial majority of jurisdictions (38) protect any layperson who can meet the statutory requirements. *Id.* However, a sizeable minority of jurisdictions (14) excludes laypersons from the class of persons protected under their Good Samaritan statutes and extends immunity protection only to certain classes of professionals, including physicians, nurses and emergency medical professionals. Ohio is not listed as one of the 14 jurisdictions whose

statutes protect only specified professionals. *Id.*, fn. 106.[2]

{¶ 15} R.C. 2305.23 states that "[n]o person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct." Appellant essentially requests this court to interpret the term "emergency care" to mean only "emergency *medical* care" and to interpret the statute to apply only to health care professionals. However, in construing a statute, a court may not add or delete words. *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, ¶ 32. The language of R.C. 2305.23 plainly states that "[n]o person" can be held liable for civil damages as result of that person's administering "emergency care" at the scene of the accident, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct. Additionally, the statute states "emergency care," not "emergency *medical* care." Therefore, we hold that the Good Samaritan statute in R.C. 2305.23 applies to *any* person, health care professional or otherwise, who administers "emergency care," medical or otherwise, at the scene of an emergency and who meets the remaining requirements of the statute, e.g., their acts do not constitute willful or wanton misconduct.

{¶ 16} In support of his claims that we should interpret the phrase "emergency care" in R.C. 2305.23 to mean only "emergency *medical* care" and interpret the statute to apply only to health care professionals, appellant relies on language in the Ohio Supreme Court's decision in *Primes v. Tyler*, 43 Ohio St.3d 195 (1975), as well as the First District Court of

---

2. The 14 jurisdictions whose statutes protect only specified professionals are Alabama, Connecticut, Illinois, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Missouri, New York, Pennsylvania, Rhode Island, the Virgin Islands and Utah.

Appeals' decision in *Hamisfar v. Baker Concrete Constr.*, 1st. Dist., Hamilton No. C-970228, 1998 WL 173238 (Feb. 8, 1998), and the Ninth District Court of Appeals' decision in *Butler v. Rejon, Jr.*, 9th Dist. Summit No. 19699, 2000 WL 141009 (Feb. 2, 2000).[3]

{¶ 17} In *Primes*, the Ohio Supreme Court held that Ohio's "guest statute" in former R.C. 4515.02 was unconstitutional. *Id.* at syllabus. In so holding, the court noted that one of the asserted statutory objectives of the guest statute was "the promotion or preservation of hospitality," *id.* at 201, and in a footnote to its opinion, the court stated:

> Notions of hospitality underlie R.C. 2305.23, the Ohio good samaritan law. That statute singles out a group of benevolently-disposed individuals for immunity from negligent injury to persons while rendering *medical* treatment during the exigencies of an emergency. However, the favored treatment accorded such "good samaritans" would appear to further a legitimate legislative objective of providing emergency *medical* assistance to injured persons where delay might result in death or great bodily injury.

(Emphasis added.) *Id.* at 201, fn. 5.

{¶ 18} While the language in footnote 5 of *Primes* lends some support to appellant's argument that the term "emergency care" in R.C. 2305.23 should be interpreted to mean emergency *medical* care, this language is unquestionably dicta, and therefore is not controlling in this case.

{¶ 19} In *Hamisfar*, the First District stated in footnote 2 of its decision that the "'Good Samaritan' doctrine" set forth in the Restatement of the Law 2d, Torts, Section 323, at 135 (1965), "is not to be confused with R.C. 2305.23, the 'Good Samaritan' statute *absolving health-care providers under certain emergency circumstances*." (Emphasis added.) This language lends some support to appellant's argument that R.C. 2305.23 applies only to

---

3. Appellant also cites 70 Ohio Jurisprudence 3d, Negligence Section 29 (2014), which states: "The Good Samaritan statute applies to any person who renders emergency *medical* care at the scene of an emergency without remuneration or the expectation of remuneration, including volunteer firefighters whose sole or primary duty is to perform such function. Likewise, the statute applies to volunteer firefighters." (Emphasis added.)

health-care providers and not to laypersons, but it, too, is merely dicta.

**{¶ 20}** The case that provides the strongest support for appellant's arguments is the Ninth District's decision in *Butler*, but the relevant language in that decision is also dicta.  In that case, Butler and his wife were driving on a highway when he spotted a disabled car that was facing oncoming traffic and partially blocking the highway.  *Id.* at *1.  Butler stopped to see if the driver, who was intoxicated, needed assistance.  *Id.*  Butler parked his car between the disabled vehicle and the oncoming traffic and turned on his hazard flashers to protect the driver of the disabled vehicle.  *Id.*  While Butler was waiting for emergency assistance, a car driven by Andrew Rejon crashed into the rear of Butler's vehicle.  *Id.*  When Butler extricated his wife from the wreckage, he aggravated his pre-existing back injury.  *Id.*  Butler brought suit against Rejon.  *Id.*  The jury awarded Butler $8,000 for his damages but found him 35 percent comparatively negligent, and therefore Butler's award was reduced to $5,200.  *Id.*  On appeal, Butler argued the trial court erred by failing to instruct the jury on the Good Samaritan statute.  *Id.* at *2.  The Ninth District overruled Butler's argument, stating:

> In order to be covered by the Good Samaritan statute, one must be providing emergency medical care or treatment to another individual. R.C. 2305.23. Consequently, R.C. 2305.23 shields a good samaritan from civil liability in an action brought by the person to whom emergency medical care was rendered. *We conclude that this statute generally does not cover third parties.* Thus, we find that even though appellant was trying to protect the disabled driver, appellant did not provide emergency care or treatment to Mr. Rejon, and consequently, cannot use R.C. 2305.23 as a shield from liability in a comparative negligence action. Therefore, we hold that the trial court did not err to the prejudice of Mr. Butler when it did not charge the jury on the Good Samaritan statute.

(Emphasis added.)  *Id.* at *3.[4]

---

4. See also *Hutton v. Logan*, 152 N.C. App. 94, 101 (2002) (Good Samaritan statute immunizes rescuer from liability for an ordinary negligence claim brought by the person rescued, but the rescuer must defend, on his or her own, lawsuits brought by third parties who were allegedly injured as a result of the rescuer's negligent conduct during the rescue attempt).

{¶ 21} The Ninth District's statements in *Butler* that "[i]n order to be covered by the Good Samaritan statute, one must be providing emergency medical care or treatment to another individual" and that "R.C. 2305.23 shields a Good Samaritan from civil liability in an action brought by the person to whom emergency medical care was rendered" lend additional support to appellant's arguments that the term "emergency care" should be interpreted to mean emergency *medical* care. *Id.* However, *Butler* is readily distinguishable from this case.

{¶ 22} The Ninth District's actual holding in *Butler* is that the Good Samaritan statute generally does not cover *third parties*, and therefore, even though Butler was trying to protect the disabled driver, he did not provide emergency care or treatment to Rejon who was the "third party" in the case. Consequently, Butler could not use the Good Samaritan statute as a shield from liability on Rejon's comparative negligence claim, and thus, the trial court did not err in refusing to charge the jury on the Good Samaritan statute. *Id.* This case, by contrast, does not involve a third party.

{¶ 23} Appellant argues that an "emergency" did not exist in this case, for purposes of R.C. 2305.23, because he was merely "trapped," "unharmed," between his stopped semi-truck and the wall of the loading dock wall when appellee attempted to move the truck. Appellant also argues that even if this court determines that there was an emergency, there is still a genuine issue of material fact as to whether operating a semi-truck constitutes "emergency care" for purposes of the Good Samaritan statute. We find these arguments unpersuasive.

{¶ 24} R.C. 2305.23 does not define "emergency." "In the absence of a definition of a word or phrase used in a statute, the words are to be given their common, ordinary, and accepted meaning." *In re Foreclosure of Liens for Delinquent Land Taxes v. Parcels of Land Encumbered with Delinquent Tax Liens*, 140 Ohio St.3d 346, 2014-Ohio-3656, ¶ 12, citing *Wachendorf v. Shaver,* 149 Ohio St. 231 (1948), paragraph five of the syllabus. An

- 9 -

"emergency" is commonly defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action," or a "pressing need for help." *Webster's Third New International Dictionary* 741 (1993). The common, ordinary, and accepted meaning of "care," as used in R.C. 2305.23, is to "provide for or attend to needs or perform necessary personal services (as for a patient or a child)." *Id.* at 338.

{¶ 25} An emergency clearly exists where a man's leg is pinned between his semi-truck and a loading dock, yelling so loud for help he is heard across the street. Appellee's actions in trying to move the semi-truck constituted "emergency care" as defined in R.C. 2305.23, because he was trying to resolve the emergency created by appellant. See *Held v. City of Rocky River*, 34 Ohio App.3d 35, 36, 38-39 (8th Dist.1986) (emergency situation clearly existed where firefighter had been knocked down and pinned by a continuous stream of rushing water and off-duty firefighter came upon the scene and dragged the pinned firefighter out of the stream to safety, allegedly injuring him in the process; the off-duty firefighter thus rendered "emergency care" to the allegedly injured firefighter for purposes of the Good Samaritan statute).

{¶ 26} Appellant also argues the trial court erred in granting summary judgment against him and in favor of appellee, because genuine issues of material fact exist in this case, including who was at fault in the accident. In support of this argument, appellant asserts that this court must accept as true, for purposes of summary judgment, that (1) before appellee "intervened," appellant "was simply wedged in between his properly parked semi-trailer, and was uninjured; (2) appellant "began calling for help and looking for a qualified individual to move the tractor trailer" and that "[i]nstead of a qualified individual, [appellee] rushed onto the scene"; (3) appellee has been described by one of his co-workers as a "gung-ho" individual who was "willing to run into a burning building to rescue a child"; (4) when appellee arrived at the scene, he immediately jumped into the truck, revved the engine

and released the air brake, causing the tractor trailer to roll backwards and crush [appellant's] leg."

{¶ 27} Appellant describes as "[i]ncredulous" appellee's deposition testimony that he got into the tractor-trailer, grabbed the steering wheel, revved the engine, put his hand on the gear shift and then "decided not to do anything." Appellant points out that appellee told only one of his co-workers that he got into appellant's tractor-trailer at the time of the accident and that he did not share this information with his other co-workers—a fact which appellant describes as "an incredible omission to your friends after the event." Appellant also notes that appellee "willingly admits * * * that he entered the [tractor-trailer] despite having no knowledge of how to operate the vehicle."

{¶ 28} Appellant is essentially alleging that the trial court failed to look at the evidence presented in the summary judgment proceedings in the light most favorable to him before granting summary judgment in favor of appellee. However, a review of the trial court's decision shows that the trial court did, in fact, construe the evidence in a light most favorable to appellant in ruling on appellee's motion for summary judgment. Specifically, the trial court stated:

> The parties and evidence indicate [appellant] created the potential for rescue when he slipped from the loading dock and became wedged behind the trailer of this rig. [Appellant] yelled for help, provoking [appellee's] efforts. [Appellee] entered the cab of the vehicle and attempted to operate it, but instead of effectuating a release of the captive [i.e., appellant], the truck went backward, exacerbating the situation.

{¶ 29} Thus, it is clear that the trial court accepted as true, for purposes of summary judgment, appellant's testimony that appellee attempted to drive the semi-truck forward to free appellant's pinned leg, but allowed the semi-truck to roll backwards, instead, thereby "exacerbating the situation." However, these facts, alone, were not sufficient to establish the existence of a genuine issue of material fact in this case that should have precluded the trial

court from granting summary judgment to appellee.

{¶ 30} R.C. 2305.23 expressly states that "[n]o person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency * * * for acts performed at the scene of such emergency, unless such acts constitute *willful or wanton misconduct.*" (Emphasis added.) Therefore, even if it is accepted as true that appellee released the semi-truck's air brake and tried to drive the semi-truck forward to free appellant, but instead, permitted the semi-truck to roll backward and crush appellant's leg, appellee still cannot be held liable for his actions by appellant so long as appellee's acts in administering the emergency care did not "constitute willful or wanton misconduct."

{¶ 31} Appellant contends that appellee was negligent in trying to drive the semi-truck forward even though he did not know how to do so and in doing nothing after he let the semi-truck roll backwards. He essentially relies on appellee's lack of knowledge on how to operate a semi-truck as the basis for his argument that genuine issues of material fact exist in this case that should have precluded a grant of summary judgment. However, it was not sufficient for appellant to show that appellee was negligent in trying to rescue him once he saw that appellant's leg was pinned between the semi-truck and the loading dock. Instead, appellant was required to show that appellee acted in a "willful or wanton" manner in trying to rescue him. R.C. 2305.23. Even when the evidence in this case is examined in a light most favorable to appellant as the nonmoving party, there is no evidence in the record to show that there is a genuine issue of material fact on whether appellee's conduct was willful or wanton.

{¶ 32} "'Willful conduct' has been defined as 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" *Brown-Spurgeon v. Paul Davis Sys. of Tri-State Area, Inc.*, 12th Dist. Clermont No. CA2012-09-069, 2013-Ohio-1845, ¶ 50, quoting *Anderson v. Massillon,* 134

- 12 -

Ohio St.3d 380, 2012-Ohio-5711, paragraph two of the syllabus.

{¶ 33} "Wanton misconduct" is more than mere negligence; it is "the failure to exercise any care whatsoever." *Golden v. Milford Exempted Vill. Sch. Dist. Bd. of Edn.*, 12th Dist. Clermont No. CA2010-11-092, 2011-Ohio-5355, ¶ 38. "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." (Internal citations omitted.) *Id.*, quoting *Johnson v. Baldrick,* 12th Dist. Butler No. CA2007-01-013*,* 2008-Ohio-1794 at ¶ 29.

{¶ 34} Here, appellee's conduct clearly did not rise to the level of willful or wanton misconduct, even when the evidence and all reasonable inferences that may be drawn from it are viewed in the light most favorable to appellant. There is nothing to show that appellee intentionally deviated from a clear duty or definite rule of conduct, with a deliberate purpose not to discharge some duty necessary to appellant's safety, or that appellee purposefully did a wrongful act with knowledge or appreciation of the likelihood of resulting injury. Nor is there any evidence to show that appellee failed to "exercise any care whatsoever" or that establishes "a disposition to perversity" on appellee's part, with such perversity being under such conditions that appellee must have been conscious that his conduct would in all probability result in injury. *Golden,* quoting *Johnson.*

{¶ 35} In light of the foregoing, appellant's assignment of error is overruled.

{¶ 36} Judgment affirmed.


PIPER, J., concurs.


RINGLAND, P.J., dissents.

**RINGLAND, P.J., dissenting**:

{¶ 37} I respectfully dissent from the majority's opinion. I agree with the majority that this case is distinguishable from *Butler*, 9th Dist. Summit No. 19699. Nevertheless, I find the language in *Butler* regarding the proper interpretation to be given to the Good Samaritan statute in R.C. 2305.23 to be strongly persuasive and would follow that language here, and thus reverse the trial court's decision to grant summary judgment in favor of appellee.

{¶ 38} In *Butler* at *3, the Ninth District stated:

Ohio's Good Samaritan statute, R.C. 2305.23, states in pertinent part:

> No person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct. * * *

In interpreting a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. In order to be covered by the Good Samaritan statute, one must be providing emergency *medical* care or treatment to another individual. R.C. 2305.23. Consequently, R.C. 2305.23 shields a good samaritan from civil liability in an action brought by the person to whom emergency *medical* care was rendered.

(Emphasis added.)

{¶ 39} I agree with the Ninth District's determination in *Butler* that when the Good Samaritan statute in R.C. 2305.23 is "read in context and construed according to the rules of grammar and common usage," R.C. 1.42, it is clear that "[i]n order to be covered by the Good Samaritan statute, one must be providing emergency *medical* care or treatment to another individual."

{¶ 40} Here, appellee clearly was not providing any care or treatment, let alone *emergency medical* care or treatment, to appellant when he attempted to drive appellant's semi-truck forward to free appellant's pinned leg, and therefore appellee should not be held

- 14 -

immune from liability under R.C. 2305.23 for any civil damages he may have caused appellant in coming to his aid. Whether or not appellee should be held liable for the actions he took in coming to appellant's aid presents a genuine issue of material fact that should have prevented the trial court from granting summary judgment against appellant and in favor of appellee. Consequently, I would reverse the trial court's decision to grant summary judgment to appellee and remand this matter for further proceedings. Since the majority refuses to do so, I respectfully dissent from their opinion.