#25635-a-SLZ

**2011 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

NINE, INC. d/b/a 9 BAR
AND NIGHTCLUB; and GDT,
INC. d/b/a CUBBY'S SPORTS
BAR & GRILL; and SKINNER'S,
INC. d/b/a SKINNER'S PUB,                                    Plaintiffs and Appellees,

v.

CITY OF BROOKINGS,                                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

DONALD M. McCARTY of
McCann, Ribstein & McCarty, P.C.            Attorneys for plaintiffs
Brookings, South Dakota                            and appellees.

MICHAEL A. HENDERSON
DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert & Garry LLP       Attorneys for defendant
Sioux Falls, South Dakota                           and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 21, 2011

OPINION FILED **04/20/11**

#25635

ZINTER, Justice

[¶1.]          Appellees brought this declaratory judgment action against the City of Brookings. They challenged the method by which Brookings set the fee for new on-sale full-service restaurant alcoholic beverage operating agreements (more commonly referred to as liquor licenses). The circuit court declared the Brookings methodology invalid and enjoined its enforcement. We affirm.

*Facts and Procedural History*

[¶2.]          Appellees own and operate private bar and/or restaurant businesses in Brookings. These businesses are authorized to sell alcoholic beverages under operating agreements with Brookings. Appellees sought a declaration that a Brookings ordinance and resolution establishing the fee for additional full-service restaurant on-sale liquor operating agreements/licenses violated SDCL 35-4-117 because the fee was based on city population rather than the market value of existing operating agreements/licenses.

[¶3.]          A brief history of the law authorizing municipal liquor licenses is necessary for context. Prior to 2008, municipalities were only permitted to authorize a limited number of businesses to sell or serve alcoholic beverages. In 2008, the Legislature passed statutes authorizing municipalities to issue additional on-sale "licenses" to full-service restaurants. *See* SDCL 35-4-110 to -119.[1] Under

1.      SDCL 35-4-111 (2008) provided:

Notwithstanding the provisions of § 35-4-11 or 35-4-11.1 or the on-sale license fees established pursuant to subdivisions 35-4-2(4) and (6), the governing board of any incorporated municipality or the board of county commissioners of any county may, by ordinance, issue

(continued . . .)

-1-

the new legislation, the fee for the new licenses was to be based on the current

market value of existing licenses.  SDCL 35-4-117 (2008) provided:

> Any municipality or county adopting the ordinance pursuant to
> § 35-4-111 shall set the price of a new full-service restaurant on-
> sale license, pursuant to § 35-4-116, *at or above the current fair
> market value.*  However, such full-service restaurant on-sale
> license fee may not be less than the minimum on-sale license fee
> established pursuant to subdivision 35-4-2(4) or (6).  For
> purposes of this section, the term, *current fair market value,
> means the documented price of the on-sale license most recently
> sold between January 1, 2003, and January 1, 2008,* through an
> arm's-length transaction, less the value of any real or personal
> property included in the transaction.

(Emphasis added.)  The Legislature also provided for a minimum fee based on

population.  SDCL 35-4-116 (2008) provided in part:

> Any municipality or county adopting the ordinance pursuant to § 35-4-
> 111 may issue additional on-sale licenses to full-service restaurants.
> Any municipality adopting such ordinance shall charge at least one
> dollar for each person residing within the municipality as measured by
> the last preceding decennial federal census.

[¶4.]     In response to the 2008 legislation, Brookings decided to authorize

additional on-sale liquor licenses.  However, the appropriate fee to be charged for

the new licenses was complicated by the fact that Brookings is a "local option

community."  *See* SDCL 35-3-7.[2]  In local option communities there is only one

---

(. . . continued)
> additional on-sale licenses for full-service restaurants if the
> municipality or county charges at least the minimum fee required by §
> 35-4-116.

2.     Local option communities are described in SDCL 35-3-7, which provides:

> Any municipality may, by vote of its electors, as provided in §§ 35-3-8
> to 35-3-23, inclusive, determine whether or not alcoholic beverages,
> except malt beverages, may be sold within the municipality by on-sale
>                                                       (continued . . .)

liquor "license," and that license is held by the city. Those cities then enter into "operating agreements" with private businesses authorizing the businesses to sell alcoholic beverages. *See* SDCL 35-4-19.[3] Because there technically are no "licenses" or "license" sales to determine current fair market value in local option communities like Brookings, a question arose whether Brookings's operating agreements should be considered the same as licenses for purposes of determining the fee under SDCL 35-4-117. The 2009 Legislature resolved the question by adopting SDCL 35-4-19.1. That statute provided that "[e]ach operating agreement holder is a license holder for the purposes of §§ 35-4-110 to 35-4-120, inclusive, and when applying these [new licensing] provisions."

[¶5.]     SDCL 35-4-19.1 was not, however, in effect at the time Brookings enacted its ordinance and resolution. Therefore, Brookings took the position that because there were no "license" sales upon which current market value could have

---

(. . . continued)

> dealers. The municipality may also in the same manner determine whether the municipality shall procure a license or licenses for the sale of alcoholic beverages, except malt beverages, at retail, or, if the municipality is engaged in such a business, whether the license or licenses shall be renewed.

3.     SDCL 35-4-19 provides in part:

> No retailer license under this chapter, except for licenses issued pursuant to subdivisions 35-4-2(12), (16), (17), and (17A), other than to the municipality, may be granted to operate in any municipality which has obtained a license under this chapter except that:
>
>                              . . .
>
> (2) If a municipality has been issued an on-sale and off-sale license, then the governing board may by resolution enter into an operating agreement with any person for the specific purpose of operating the on-sale establishment or the off-sale establishment, or both for the municipality.

been established under SDCL 35-4-117, the city was authorized to set the new license fee at the minimum amount based on population as provided for in SDCL 35-4-116. Accordingly, Brookings adopted an ordinance and resolution setting the new fee at $18,504, the minimum amount based on population. Appellees subsequently commenced this action.

[¶6.]      The circuit court ruled that operating agreements were the same as licenses for purposes of determining the fee under the new statutes. The court declared the new Brookings ordinance and resolution invalid because they established the new license fee in an amount less than current fair market value as required by SDCL 35-4-117. The court did not determine whether SDCL 35-4-19.1 applied retroactively because the issue was moot under the court's interpretation of SDCL 35-4-117.

[¶7.]      Brookings raises two issues on appeal:

1.      Whether Brookings properly set the fee for new full-service restaurant on-sale liquor licenses in accordance with SDCL 35-4-116 and SDCL 35-4-117.

2.      Whether SDCL 35-4-19.1 applies retroactively.

*Decision*

[¶8.]      The first question is a matter of statutory construction. Statutory construction is a question of law that we review de novo. *Perdue, Inc. v. Rounds*, 2010 S.D. 38, ¶ 7 n.2, 782 N.W.2d 375, 377 n.2.

[¶9.]      Brookings contends that operating agreements are more akin to leases, which are not "sold" like licenses. Relying on this distinction, Brookings argues that there were no "license" sales in Brookings upon which a market value fee could have been calculated under SDCL 35-4-117. Therefore, Brookings argues

that it properly adopted the minimum fee based on population in accordance with SDCL 35-4-116. Brookings's argument fails to consider all relevant provisions of SDCL Title 35.

[¶10.] SDCL 35-1-1.1 (2008) provided that "[f]or the purposes of [SDCL Title 35], . . . an entity that has entered into an operating agreement with a municipality pursuant to § 35-4-19 shall be deemed to be a licensee." Concededly, this language speaks more directly to the nature of the entity than the nature of the agreement between the city and the private business. Nevertheless, the language strongly suggests that the Legislature intended operating agreements to be treated as licenses for purposes of SDCL 35-4-116 and 35-4-117.

[¶11.] This conclusion is supported by SDCL 35-4-19.1, the 2009 amendment specifically providing that for the purposes of applying the new licensing statutes, an operating agreement holder is a license holder. We may consider subsequent amendments "in gleaning the legislative intendment of the law." *In re Farmers State Bank of Viborg*, 466 N.W.2d 158, 160 (S.D. 1991). "When considering a subsequent amendment, we must decide whether the purpose of the amendment was to clarify or alter the law. . . . In making this determination, we consider the time and circumstances surrounding the enactment of the amendment." *Id*. at 160-61.

[¶12.] The Legislature's 2009 enactment of SDCL 35-4-19.1 (the amendment) occurred in the year immediately following the 2008 authorization for new licenses. The amendment was introduced and approved shortly after this litigation was

started.[4]  Thus, it appears that the amendment was a clarifying response to the litigation and question involving application of the new license law in local option communities.  *See In re Farmers*, 466 N.W.2d at 161 (finding an amendment clarifying because it was in response to litigation and because it spoke to the issue at hand with greater detail).  We conclude that the 2009 enactment of SDCL 35-4-19.1 was meant to clarify rather than alter the 2008 legislation.

[¶13.]    Because the 2009 "amendment was intended to clarify the law, we may look to it in order to determine rights under the original act."  *See In re Farmers*, 466 N.W.2d at 160.  *See also Ellis v. City of Yankton*, 526 N.W.2d 124, 126 (S.D. 1995) ("Subsequent amendments to a law to clarify the existing law may offer guidance to the intent of the law as initially enacted[.]").  The 2008 legislation did not specifically address how the new law would apply to operating agreements in local option communities.  The 2009 amendment clarified that "[e]ach operating agreement holder [was] a license holder for the purposes of . . . applying . . . [the new licensing statutes]."  SDCL 35-4-19.1.  Considering this clarifying amendment together with SDCL 35-1-1.1, we conclude the Legislature originally intended that operating agreements were to be considered the same as licenses for purposes of determining the fee under SDCL 35-4-116 and 117.

[¶14.]    We also observe that there had been a sale of an operating agreement in Brookings during the relevant period necessary to determine fair market value of operating agreements under SDCL 35-4-117.  Therefore, when Brookings decided to

---

4.    The declaratory judgment action was filed on December 23, 2008.  SDCL 35-4-19.1 was approved on February 25, 2009.  2009 S.D. Sess. Laws ch. 177, § 11.

authorize new operating agreements under the new statutes, Brookings was required to adopt an ordinance and resolution using prior operating agreement sales to set the new market value fee in accordance with SDCL 35-4-117. The circuit court correctly determined that the Brookings ordinance and resolution were invalid for setting the fee based on population under SDCL 35-4-116 rather than market value under SDCL 35-4-117. In light of our holding, the issue involving the retroactivity of SDCL 35-4-19.1 is moot.

[¶15.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.